## BOARD OF EDUCATION OF CITY OF ST. LOUIS v. CITY OF ST. LOUIS et al., Appellants.

**Division One, March 30, 1916.**

1. **POLICE REGULATION: Water-closets: Conflicting Authority of City and School Board.** The Board of Education of the city of St. Louis is not subject to the ordinances and regulations of the city in respect to the manner of construction of water-closets and vents therefrom in a public school building. Under the statute the Board of Education is specifically · "charged with the care of the public school buildings of said city, and with the responsibility for the ventilation and sanitary condition thereof," and under the Constitution that statute makes their authority exclusive.

2. ————: ————: ————: **Presumption of Application to Sovereign: Repeal by Implication.** Where the sovereignty itself has dealt with the subject of the construction and management of property which is held and used by its agents for the highest governmental purposes, no presumption that laws of the character of the charter of the city of St. Louis and ordinances passed in pursuance thereof are applicable to the sovereign, can prevail, for then the power does not rest upon presumption, but upon express legislative declarations.

3. ————: ————: ————: ` Paramount Authority of Statute. The general charter of the city of St. Louis must yield to the provisions of a law having special application to particular matters and things within the field of its operation; and where there is such a general law, the question of whether the charter and ordinances are impliedly repealed without being mentioned in the general law, is not in the case.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*William E. Baird* for appellants.

(1) The Board of Education is a public corporation formed for a special and limited purpose; its charter is found in the statutes, which must be construed by

the same rules as are applied to other statutes. Heller v. Stremmel, 52 Mo. 311; State v. Lockett, 54 Mo. App. 202; Peers v. Board, 72 Ill. 508; Smith v. Proctor, 130 N. Y. 319; McQuillin, Mun. Corp., sec. 114. (2) The property controlled by the board is not owned by the State or used for governmental purposes; the presumption that the sovereign or the State is not bound by local regulations cannot be indulged. Kansas City v. Fee, 174 Mo. App. 510; School Dist. v. Pasadena, 166 Cal. 7; Public Schools v. St. Louis, 26 Mo. 468; Bank v. State, 69 Iowa, 30; Sioux City v. School Dist., 55 Iowa, 150; City, Trustee, v. Chicago, 207 Ill. 37; Board v. People, 219 Ill. 87. (3) The city of St. Louis, by its charter, had and still has plenary power over sewers, drains, sanitation and other local subjects of regulation. Ex parte Smith, 231 Mo. 111; Gunning Co. v. St. Louis, 235 Mo. 99. (4) No such power has been given the Board of Education; a modification of the city charter will not be implied in the law creating the board. R. S. 1909, secs. 11030-11062; Dillon, Mun. Corp. (5 Ed.), sec. 235; State ex rel. v. Severance, 55 Mo. 386; Wills v. Railroad, 133 Mo. App. 625; E. St. Louis v. Maxwell, 99 Ill. 443; Wood v. Comrs., 58 Cal. 563; State v. Williams, 80 Tenn. 251.

*Robert Burkham* for respondent.

(1) Education is a governmental function. Article 11, Missouri Constitution; Lehew v. Brummell, 103 Mo. 550; Heller v. Stremmel, 52 Mo. 309; State ex rel. v. St. Louis School Board, 112 Mo. 213. The members of the Board of Education of the city of St. Louis are officers under the State and exercise functions of government. State ex rel. v. Rombauer, 104 Mo. 619; State ex rel. v. Gordon, 231 Mo. 547; Secs. 11030–11062, R. S. 1909. The Board of Education is a public corporation separate and distinct from and entirely independent of the municipality of St. Louis.

Waterworks Co. v. School Districts, 23 Mo. App. 241; State ex rel. v. Tracy, 94 Mo. 221; School District No. 7 v. School District of St. Joseph, 184 Mo. 156. (2) School buildings being maintained by the State in the exercise of a governmental function, the presumption arises, at least so far as their internal construction is concerned, that they are not subject to municipal regulation or control. (a) The general principle: Bank v. United States, 86 U. S. 227; 26 Am. & Eng. Ency. of Law, p. 644; 36 Cyc. 1171. (b) The application of the principle to local governmental subdivisions: Cole v. White Co., 32 Ark. 43; Whitehead v. Board of Education, 139 Mich. 490; Cincinnati v. Volk, 72 Ohio St. 469. (c) The application of the principle to local building regulations. Institution v. Louisville, 123 Ky. 767; Milwaukee v. McGregor, 140 Wis. 35. (3) Regardless of any presumption of independence from municipal control arising from the fact that school buildings are maintained by the State and controlled by State officers, existing legislation clearly indicates that the Board of Education of the city of St. Louis is intrusted with the power to determine what kind of interior plumbing in school buildings is best adapted for its purposes. Charter of the Board of Education of City of St. Louis, Secs. 11030 to 11062, R. S. 1909.

BROWN, C.—This suit was instituted April 11, 1912, against the defendant city and Stephen H. Gilmore, its supervisor of plumbing, to obtain an injunction restraining them from interfering with work in course of construction under contract for a new school building in said city to be known as the Horace Mann School. The contract provided for a system of vents from the water-closets known as "a continuous venting system, doing away with all local vents to the fixtures," while a regulation of the Board of Public Improvements of the city of St. Louis provided for a different

system, requiring "sewer, soil, waste, and ventilation pipes to be arranged and constructed to admit of a free circulation of air from the fresh air inlet to each fixture trap and through the roof." The petition charged that the defendants threatened to apply the ordinances and rules of the city, which are fully set out, to this work, and cause the arrest of any and all of plaintiff's agents, servants, or employees who may go upon the premises under plaintiff's direction to prosecute said plumbing work, on the charge of violating said ordinances, rules and regulations. There is no question raised as to reasonableness of the ordinances of the city or regulations of its Board of Public Improvements, nor as to whether either system of venting is superior to the other, but the case is presented and discussed upon the broad proposition as to whether or not the Board of Education, in this particular, is subject to the ordinances and regulations of the city in this respect. A general demurrer to the petition was overruled, and defendants declining to further plead, final judgment was rendered granting the injunction and the case is here upon the defendants' appeal.

Section 26 of article 3 of the charter then in force provided, among other things, that the mayor and assembly shall have power, within the city, by ordinance *not inconsistent with the Constitution* or any law of this State or of this charter, to do the following things: In clause two, to construct and keep in repair all bridges, streets, sewers and drains, and to regulate the use thereof; in clause twelve, to provide for the safe construction, inspection and repairs of all private and public buildings within the city; and in clause fourteen, to pass all ordinances not inconsistent with the provisions of the charter or the laws of the State as may be expedient in regard to the peace, good government, health and welfare of the city.

It also provides (Sec. 3, art. 4) for a board of public improvements to consist of an elective president and five commissioners with certain prescribed powers, and adds the following provision: Section 42: "The municipal assembly shall provide by ordinance such additional duties of and requirements from the board of public improvements and its several members, as it may deem necessary, and for the appointment by them of such assistants and employees as the demands of the several departments may require."

It was under these powers and ordinances passed in pursuance of them that the defendant superintendent of plumbing was appointed and the rule relating to the ventilation of water-closets, which the city is now attempting to apply to the Horace Mann School, was made.

When the framers of the present Constitution conferred upon the freeholders of the city the power to make their present charter they provided, with the most careful foresight. (Sec. 23, art. 9) that "such charter and amendments shall always be in harmony with and subject to the Constitution and laws of Missouri, except only that provision may be made for the graduation of the rate of taxation for city purposes in the portions of the city which are added thereto by the proposed enlargement of its boundaries."

In the same Constitution, and in pursuance of the uniform policy of the State from the beginning, it was provided (Sec. 1, art. 11) that "a general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the General Assembly" (not the freeholders of the city of St. Louis) "shall establish and maintain free public schools for the gratuitous instruction of all persons in this State between the ages of six and twenty years." It was in obedience to this constitutional mandate that the Act of 1897 (as amended by the Act of

May 28, 1909) under which the public schools of the
city of St. Louis have ever since been operated was
enacted. It provided that "every city in this State now
having or which may hereafter have five hundred
thousand inhabitants or over, together with the terri-
tory now within its limits, or which may in the future
be included by any change thereof, shall be and con-
stitute a single school district, shall be a body corpo-
rate, and the supervision and government of public
schools and public school property therein shall be
vested in a board of twelve members, to be called and
known as the 'Board of Education of . . .'"
[R. S. 1909, sec. 11030.]

The powers and duties of this board were highly
specialized in the act, and included the general and su-
pervising control, governing and management of the
public schools, and public school property in such city;
the power to appoint such officers, agents and em-
ployees as it may deem necessary and proper; to make,
amend and repeal rules and by-laws for the govern-
ment, regulation and management of the public schools
and school property in such city and exercise generally
all powers in the administration of the public school
system therein; and have all the powers of other school
districts under the laws of the State except as herein
provided. Particularizing further, it provides for the
appointment by the Board of Education of a commis-
sioner of school buildings who "shall be charged with
the care of the public school buildings of such city, and
with the responsibility for the ventilation, warming,
sanitary condition and proper repair thereof," and
"shall prepare, or cause to be prepared, all specifica-
tions and drawings required, and shall superintend
all the construction and repair of all of such build-
ings." [R. S. 1909, sec. 11036.] In the performance
of these duties he was required to appoint such assist-
ants as should be authorized by the Board of Educa-

tion, one of whom "shall be a trained and educated engineer, qualified to design and construct the heating, lighting, ventilating and sanitary machinery and apparatus connected with the public school buildings." [R. S. 1909, sec. 11037.]

It will be noted that this act not only gives the Board of Education plenary power with reference to the construction, maintenance and care of the public school buildings of the city, but descends into matters connected with the health and comfort of the pupils including the designing as well as the construction and maintenance of the very appliances which are the subject of this litigation, ventilating and sanitary machinery and apparatus to be installed and maintained for the removal from the building of foul and noxious air necessarily generated in the use of the water-closets.

We have been favored by counsel on both sides with exhaustive and highly interesting briefs and arguments relating to the presumptions which should prevail in determining whether laws of the character of the charter of St. Louis and ordinances passed in pursuance of its terms are applicable to the sovereign, and whether they are repealed by general laws which do not in terms mention them. We cannot appreciate the application of either of these questions to this case. The first does not rest upon presumption, for the sovereignty itself has dealt with the subject of the construction and management of the property which is held and used by its agents for the highest governmental purposes, and we have to look no further than its legislative declarations to determine in whom the authority claimed by each of the parties to this proceeding is vested; and as to the second question so ably argued, we have only to look to the converse of the proposition stated by counsel for appellant. The question is not whether a law of general application in the city of St. Louis impliedly repeals any of the provisions of a spe-

cial act or charter for the government of that com-
munity, but it is whether the general charter yields to
the provisions of a law having special application to
particular matters and things within the field of its
operation. The statement of this question includes its
answer.

It cannot even be claimed that there is a question
in this case relating to the intention of the Legislature
to apply the Act of 1897 from which we have quoted,
to the schools of the city of St. Louis. By its
terms it describes the city of St. Louis as the only
community in the State in which it can apply. That
it gives to the Board of Education through its lawfully
constituted officers the power to design, construct and
maintain the very apparatus now in question is not
and cannot be denied by any English-speaking person,
and the constitutional power of the Legislature to en-
act it is unquestioned and unquestionable.

We have carefully examined the authorities cited
by the appellant and find but one, Pasadena School
District v. Pasadena, 166 Cal. 7, which seems to quest-
ion the view we have taken with reference to the effect
we give to the statute giving authority to the Board of
Education to supervise and govern public school prop-
erty within the city, and charging it through its officers
possessing special qualifications for that purpose with
the responsibility for the ventilating, warming and san-
itary condition of such building, and the designing as
well as the construction of the machinery and appli-
ances for that purpose. In the California case the city
by ordinances established an elaborate building code
providing that only certain classes of buildings should
be erected in certain fire districts and for the inspec-
tion of plumbing construction and electrical wiring and
equipment of buildings, the use of permits and the col-
lection of fees therefor, and making it unlawful to com-
mence the erection of any building within the city other

than those erected by the United States unless plans and specifications are submitted to the building inspect and a permit for the erection thereof first obtained and the fee paid. The school district denied that it was subject to these regulations and an agreed case was submitted to the court to determine it. The court stated, in substance, that the Constitution of the State had invested the city with the powers to make these regulations and that the sole contention of the school district was that it was an independent governmental agency of the State created under a general law which invested its trustees with the *control and management* of all school property within its limits, and hence insisted that its authority in that respect was not subject to be controlled by the police regulations of a municipality in which a part of the territory of the school district was embraced. The trustees of the school districts were required by statute before building school houses to submit the plans to the superintendent of schools. The court stated that it was not claimed that these code provisions *expressly gave any power to the trustees or enjoined upon them the duty of adopting sanitary* building regulations, or regulations in the nature of provisions for the public health and comfort and safety in the construction of such buildings, and held that in the general powers mentioned no such power was conferred, and that their power was not different from that possessed by private corporations and other owners of land to control it and plan and erect buildings thereon and sustained the city in its contention that a permit was required. It will be seen that the issue in that case was entirely different from the issue in this.

Here the right to erect a building within the limits of the city is not involved, but only the question as to which of these two contending municipalities is clothed by statute with the right to determine interior sanitary arrangements for the ventilation of its water-closets,

so as to promote the health and comfort of the pupils
and teachers who should be its inmates. We think it
is peculiarly appropriate that those charged with the
custody and control of the pupils while in the building
should also be charged with the protection of their
health while engaged in their studies. The Legislature
seems to have taken this view of the matter, and has,
in our opinion, in unmistakable terms, placed that re-
sponsibility upon the board. We therefore affirm the
judgment of the circuit court. *Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of
BROWN, C., is adopted as the opinion of the court. All
of the judges concur.