(No. 6576.   July 28, 1938.)

STATE, Respondent, v. W. S. ROBBINS, Appellant.

[81 Pac. (2d) 1078.]

Latham D. Moore, for Appellant.

J. W. Taylor, Attorney General, D. W. Thomas, Assistant Attorney General, and Murray Estes, Prosecuting Attorney of Latah County, for Respondent.

MORGAN, J.—In the trial court the facts were stipulated as follows:

"That prior to the 1st day of January, A. D., 1938, the county commissioners of Latah County, State of Idaho, duly and regularly passed an ordinance requiring each retailer

of beer in Latah County, State of Idaho, to pay an annual license fee of $25.00 for the sale of bottled and draught beer; that on the 10th day of December, A. D., 1937, the above named defendant duly and regularly made an application to the county commissioners for such license and complied with the regulations of the board of county commissioners in respect to such application; that on the 3rd day of January, A. D., 1938, the county commissioners rejected said application and refused to issue a license to retail beer to the said W. S. Robbins; that at all times herein mentioned the said W. S. Robbins has been, and now is, operating but one establishment for the retail of beer, which said establishment is located within the limits of the City of Moscow, Latah County, State of Idaho, and that said City of Moscow is an incorporated town; that on the 8th day of December, A. D., 1937, the above named defendant applied to, and received from, the city council of the City of Moscow, Latah County, State of Idaho, a license to retail beer during the year 1938 at his place of business in Moscow, Idaho; that on the 3rd day of January, A. D., 1938, the State of Idaho, through its commissioner of law enforcement, J. L. Balderston, did duly and regularly issue and deliver to defendant its license authorizing the above named defendant to retail beer in his place of business in Moscow, Idaho, during the year 1938.''

Judgment of conviction of the defendant was entered, from which he has appealed to this court.

This is the question presented for decision: Does a retail vendor of beer, to whom licenses to conduct his business have been issued by the state and by the city wherein it is conducted, and who has been refused a license by the county in which said city is situated, commit a crime by continuing to carry on his business of selling beer at retail?

Idaho Session Laws, 1935, page 312, chapter 132, authorizes and regulates the manufacture, sale and distribution of beer in this state. Section 5 of that chapter requires that an applicant for a license to be issued by the state commissioner of law enforcement, to sell beer at retail, shall present with his application the original, or a photostatic

copy of a license issued to him by a county or municipality of the state, establishing his right to engage in business there. Section 7 fixes the license fees to be paid to the state by those who engage in the manufacture and sale of beer. It also contains the following:

"Provided, however, that nothing in this Act shall be so construed as to prohibit or prevent municipalities or counties from licensing and regulating places of business where beer is sold to the consumer. Provided, further, that no county or any municipality, whether operating under a special charter or otherwise, shall exact a license fee from any dealer, nor shall any municipality exact a license fee from any retailer, except as follows,—

"(a) Where such retailer sells only bottled beer, not in excess of the sum of Fifty dollars ($50.00) a year;

"(b) Where such retailer sells draught beer and bottled beer, or draught beer only, not in excess of One Hundred dollars ($100.00) a year;

"Nor shall any county exact a license fee from any retailer except as follows,—

"(a) Where such retailer sells only bottled beer, not in excess of the sum of Fifty dollars ($50.00) a year;

"(b) Where such retailer sells draught beer and bottled beer, or draught beer only, not in excess of One Hundred dollars ($100.00) a year."

While it will be inferred from the foregoing that counties are permitted to collect license fees from retail dealers in beer within their boundaries, the statute makes no suggestion that one who is engaged in vending beer at retail within a city, which has regularly licensed him to do so is guilty of a crime in so doing because he has applied to the board of commissioners of the county wherein the city is situated for a license and his application has been denied.

This court said in *Re Moore,* 38 Ida. 506, 515, 224 Pac. 662, 665:

"before an act may be held by the courts to be a crime it must clearly and unmistakably appear that the legislature has made it so.

" 'There can be no constructive offenses, and before a man can be punished his case must be plainly and unmistakably within the statute.' (*United States v. Lacher*, 134 U. S. 624, 10 Sup. Ct. 625, 33 L. ed. 1080; *United States v. Bathgate*, 246 U. S. 220, 38 Sup. Ct. 269, 62 L. ed. 676.)

" 'An offense is not punishable unless it falls within the condemnation of some penal statute. If it is not plainly and specifically within the act, it is not against law, and no conviction can be had thereunder. Its provisions are not to be extended by implication, and the act charged as an offense must be unmistakably within the letter as well as the spirit of the law.' (*State v. Tuffs*, 54 Mont. 20, 26, 165 Pac. 1107; *State v. Lutey Bros.*, 55 Mont. 545, 179 Pac. 457.)'' (See, also, *State v. Burns*, 53 Ida. 418, 23 Pac. (2d) 731.)

*Anderson v. Board of Commissioners*, 22 Ida. 190, 125 Pac. 188, is a case wherein a writ of mandate was sought to compel a county board to issue a liquor license to plaintiff authorizing him to sell intoxicating liquors within the limits of the city. This court held, pursuant to the statutes then in force, that the board exercised legal discretion in acting upon and rejecting the application for license.

This case is distinguishable from that. When that decision was written, traffic in intoxicating liquors in Idaho was regulated and controlled by Revised Codes, chapter 33, containing, among others, the sections hereinafter referred to. Section 1506 made it unlawful to ''sell spirituous, malt or fermented liquors or wines, to be drank in, on or about the premises where sold, without having first procured a license and given a bond as hereinafter provided.'' Section 1507 required that all applications for such licenses must be made to the board of county commissioners of the county wherein it was proposed to sell such liquors, at least twenty days before the same was to be acted upon. It was further provided therein that ''said application may be granted or rejected by said board as hereinafter provided.'' Section 1512 authorized the revocation of a license should the licensee be convicted of a violation of any of the provisions of the chapter, or any penal statutes of the state relating to the

sale of intoxicating liquors, or should he fail to conduct his place of business in a quiet, orderly and peaceable manner, or violate any of the conditions of his bond. Section 1513 authorized any city or town within a county where such bond was filed and license granted, to prohibit the person so licensed from engaging in the business of selling intoxicating liquors, within its corporate limits, until he obtained from said city or town authorities such license as authorized by law and required by its ordinances:

"*Provided,* That no additional bond shall be required by said city or town, nor shall any license be granted by the authorities of any such city or town, to anyone who has not filed the required bond with the board of county commissioners, and obtained from such board a license as herein provided: And, *Provided further,* That no license granted by such city or town shall run for any longer period than the license granted by such board of county commissioners; and the revocation of the county license granted by the board of county commissioners shall work a revocation of any license granted by such city or town."

Section 1518 made selling or giving away spirituous, malt or fermented liquors or wine in violation of said chapter, or without having first complied with its requirements, a misdemeanor, and prescribed the punishment to be inflicted in case of conviction thereof.

If our present law (Sess. Laws, 1935, chap. 132) regulating the retail sale of beer, contained the equivalent of the provisions of Revised Codes, chapter 33, we would affirm this conviction. The most that can be said for our present law is that it does not prohibit counties "from licensing and regulating places of business where beer is sold to the consumer," and does limit the amount which may be exacted from a retail beer dealer as a license fee. It does not make it the duty of the county to issue licenses, nor does it make the power of cities and towns within it, to license and regulate the sale of beer, dependent upon a license having been granted by the county to the dealer.

Article 12, sec. 2, of our constitution is as follows:

"Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws."

That section is an exact copy of art. 11, sec. 11, of the California constitution. In *Ex parte Knight,* 55 Cal. App. 511, 203 Pac. 777, 778, the court quoted from, and followed, *Ex parte Roach,* 104 Cal. 272, 37 Pac. 1044, construing that section, as follows:

"The power to make these regulations is by this section conferred upon the city as well as upon the county, and must be held to be equally authoritative in each. It is a portion of the lawmaking power which the people through their Constitution have conferred upon these respective bodies, and its exercise is entitled to the same consideration and to receive the same obedience as that portion of the same power which by the same instrument has been conferred upon the Legislature. The regulations made under this authority are none the less a part of the law because the authority to make them is conferred immediately by the Constitution, than if it had been conferred immediately through an act of the Legislature. The only limitation upon the exercise of the power is that the regulations to be made under it shall not be 'in conflict with general laws.' As this limitation applies equally to regulations of the county and the city, it cannot be held by the terms of the limitation that the regulation of either of these bodies is a general law for the other, and it is held that an ordinance passed by a county is not a 'general law' within the meaning of this section of the Constitution. *Ex parte Campbell,* 74 Cal. 20, 25, 15 Pac. 318, 5 Am. St. 418."

The California court further said in the Knight case:

"Since, therefore, a municipality is a distinct governmental entity, entirely independent of the county as such, and is, consequently, subject to no local legislation which it is within the power of the governing board of the county to enact, it is wholly immaterial whether or not the municipal authorities exercise or put into operative effect all the powers conferred upon it by its charter and the Constitution. The

county, in brief, has no legal right to legislate for a municipality located within its limits upon any subject which is within the scope of the powers granted to the municipality, and particularly upon any matters involving the police power of the state. . . . .

"Moreover, as the cases above cited declare, when a municipal corporation is organized within the limits of a county, then so much of the territory of such county as is comprehended within the municipal limits of such corporation is, so far as local government is concerned, withdrawn from the county, and any ordinances passed by the latter can have no binding or any force upon the municipality as to any matters or subjects as to which the latter is vested with the power to enact prohibitory or regulatory local laws."

See, also, *Ex parte Roach,* 104 Cal. 272, 37 Pac. 1044; *In re Mansfield,* 106 Cal. 400, 39 Pac. 775; *Los Angeles County v. Eikenberry,* 131 Cal. 461, 63 Pac. 766; *Ex parte Pfirrman,* 134 Cal. 143, 66 Pac. 205.

However, the right to exercise the police power of the state in local police, sanitary and other regulations, has not been granted to counties and municipalities by the constitution without limitation. That right is limited to such regulations as are not in conflict with general laws. Until the legislature enacts a general law with which the rights of the city of Moscow to regulate the sale of beer within its limits will be in conflict, those engaging in that business, in conformity to its regulations, will not thereby render themselves liable to criminal prosecution.

The judgment appealed from is reversed.

Holden, C. J., concurs; Givens, J., concurs in the conclusion reached. Ailshie and Budge, JJ., sat with the court at the hearing but do not participate in the decision.