KANSAS CITY, MISSOURI, Appellant, v. SCHOOL DISTRICT OF KANSAS CITY, MISSOURI.—No. 40157.—201 S. W. (2d) 930.

Division One, April 21, 1947.
Rehearing Denied, May 12, 1947.

*David M. Proctor*, City Counselor, and *John J. Cosgrove*, Assistant City Counselor, for appellant.

*Blatchford Downing* and *Caldwell, Downing, Noble & Garrity* for respondent.

366

■■■■■■■■■■■■

■ VAN OSDOL, C.—Plaintiff, City of Kansas City, instituted an action in 1943 to collect inspection fees from defendant, School District of Kansas City, which fees were allegedly for inspections of boilers, smokestacks, fuel-burning facilities and elevators pursuant to City's ordinances enacted under the police power vested in City. Defendant School District by its answer, and by its brief herein, questions the constitutionality of the exaction of payment of the inspection fees from defendant School District, it being alleged and contended the regulatory ordinances requiring the payment of the fees in so far as construed as applicable to inspections of the facilities of public school buildings constitute an unconstitutional usurpation of the powers of the General Assembly under Section 1, Article XI, Constitution of Missouri, 1875 (Section 1, Article IX, Constitution of Missouri, 1945); and it is further alleged and contended the exaction of the fees constitutes a grant of the State's public moneys to a municipality in violation of Sections 46 and 47, Article IV, Constitution of Missouri, 1875. A general demurrer was interposed to the answer. The trial court, acting under the procedure applicable prior to the effective date of the Civil Code of Missouri, Laws of Missouri, 1943, p. 353 et seq., overruled the demurrer. The plaintiff refused to further plead, and final judgment for defendant was rendered. Plaintiff has appealed.

It is the position of plaintiff-appellant City that the police power within the corporate limits of City of Kansas City is vested in City, not in School District; and the boilers, chimneys, fuel-burning facilities and elevators of public school buildings are subject to City's police power. City further says an inspection fee is a necessary incident to defraying the expense incurred in City's exercise of the power; and the exaction of such fee from School District constitutes neither a tax nor an unconstitutional grant of public funds to City.

(It is conceded by School District in its brief that the fees are reasonable in amount and are truly inspection fees, that is, the fees are not taxes in any sense.)

■ As we understand defendant-respondent School District's position, it does not herein question the validity of City's regulatory measures in their general application; nor does School District object

to City's inspections of School District's school building facilities or contest the City's right to inspect; nor does School District question City's right to invoke some appropriate remedy if School District's facilities upon inspection are seen to be dangerous and in noncompliance with City's regulatory measures. But it is argued the exaction of the payment of the fees for the inspections is unconstitutional, because, School District says, such fees are for City purposes and if collectible must be paid from public funds raised by taxation for School District's educational purpose. School District cites cases in which it has been held school property may not be subjected to the lien of special assessments for public improvements. See, for example, City of Edina to Use of Pioneer Trust Co. v. School Dist. of City of Edina, 305 Mo. 352, 267 S. W. 112, in which case no statute expressly (or by clear implication) authorized the issuance of the tax bills against public school property in payment of special assessments for the paving and curbing of the street upon which the school property was located. The court was of the opinion such a special assessment was invalid. Such an assessment is not countenanced unless expressly or by necessary implication imposed by statute. See now Normandy Consol. School Dist. of St. Louis County v. Wellston Sewer Dist. of St. Louis County, Mo. App., 77 S. W. 2d 477, wherein the St. Louis Court of Appeals treats with the same principle, and also holds ▮ Section 10338 .R. S. 1939, Mo. R. S. A., enacted in 1931 ("Real estate owned by school district subject to ordinances—assessment of costs—") is not to be accorded a retrospective effect. However, there is a distinction between the taxing power which is strictly construed against the taxing authority and the police power, to which regulatory fees are justified as incidental to the exercise of the power. Examine Wilhoit v. City of Springfield, 237 Mo. App. 775, 171 S. W. 2d 95. As stated, in our case the fees concededly are inspection fees, not taxes.

▮ Since the State through its instrumentality, School District, has constructed public school buildings in the thickly populated areas of Kansas City the State must contemplate there is reposed in itself, in School District, or in City the power and the responsibility of taking measures to protect the people and the property of the people of Kansas City from conflagrations, explosions, smoke nuisances, noxious gases, and casualties which might be caused or occasioned by the facilities of the public school buildings. Now, if City's power to regulate and supervise School District's facilities in the respects herein involved is recognized, City, it seems, should have the right to collect such fees as are reasonable and incidental to and in reimbursement for the necessary expense of the regulatory inspections, inasmuch as the inspection of School District's facilities by City is made necessary in the full exercise of City's police power by the location of School District's school buildings within the corporate limits of the

368

municipality of Kansas City. Still assuming City has the power to regulate and inspect School District's facilities in the respects herein involved, such a power must include the incidental power to exact inspection fees incidental to the inspections, a part of the regulation. If so, it must follow (and we hold) the fees are but an expense incidental to School District's educational purpose, and a legitimate disbursement of the funds raised for running public schools, due to the circumstance School District's public school buildings are located in a densely populated City. The territorial or corporate limits of School District and City are not conterminous. Part of the area of School District is outside the corporate limits of the municipality, but the fees, we assume, are for inspections of facilities of public school buildings School District has built within the corporate limits of the municipality.

In the case of Mayo v. United States, 319 U. S. 441, 63 S. Ct. 1137, cited by School District, a Florida statute required inspection and exacted a fee for the inspection of commercial fertilizer, the sale or distribution of which was comprehensively regulated by the statute. The Supreme Court of the United States held the inspection fee could not be collected from the United States for inspections of fertilizer owned by the United States and being distributed to farmers of Florida under the direction of the Secretary of Agriculture in the promotion of the national soil conservation program. In promoting the program, the United States was acting in a governmental capacity within its delegated powers, none of which may be exercised throughout the nation by any one state. The inspection fee was laid directly on the United States and was a money exaction, the payment of which, if enforcible, would be required before executing a function of government. Such a requirement is prohibited by the supremacy clause. Article VI, Constitution of the United States. The sovereign state, Florida, could not have the power to regulate the exercise of the constitutionally delegated governmental function of the sovereign United States, supreme and dominant in the exercise of the powers delegated to it. In our case, City's and School District's powers stem from the same sovereignty. The State (subject to constitutional limitation) can exercise its powers or delegate and apportion them to and between its agencies as it desires. Board of Education of City of St. Louis v. St. Louis, 267 Mo. 356, 184 S. W. 975. This brings us to the question, where has the State put the power involved in the instant action? In School District's brief School District's learned counsel have said City's right to inspect School District's buildings and appliances is not involved in the instant action; nevertheless, there is pregnant in School District's argument School District's doubt that City has the enforcible power to regulate and supervise School District's facilities in the respects here in question. In such a situation, we must consider School District is resisting its subjection to the

regulatory measures in question, inasmuch as the payment of the inspection fee should not be enforced except for such inspections as are incidental to or a part of the valid exercise of the power.

The duty to provide for free public schools is vested by the Constitution in the Legislature. Section 1, Article XI, Constitution of Missouri, 1875; Section 1, Article IX, Constitution of Missouri, 1945. A school district is a "public corporation" forming an integral part of the State and constituting that instrumentality of the State utilized by the State in discharging its constitutionally invoked governmental function of imparting knowledge to the State's youth. The School District of Oakland v. The School District of Joplin, 340 Mo. 779, 102 S. W. 2d 909, and cases therein cited. It has been said a school district is in no sense a municipal corporation with diversified powers, but is a quasi-public corporation, "the arm and instrumentality of the State for one single and noble purpose, viz., to educate the children of the district." State ex rel. Carrollton School District v: Gordon, 231 Mo. 547, 133 S. W. 44. School District is organized under the provisions of Article 18, Chapter 72, R. S. 1939, Mo. R. S. A. Section 10693 thereof gives School District's board the full power to acquire sites for and to construct and repair necessary schoolhouses. Section 10337 of Article 2, Chapter 72, R. S. 1939, Mo. R. S. A. ("Laws Applicable To All Classes Of Schools") provides that a school board shall have the care and keeping of all property belonging to the district; and that the board shall keep the schoolhouses in good repair, and provide "fuel, heating apparatus, and other material and appliances necessary for the proper heating, lighting, ventilation and sanitation of the school houses." (The latter Section is involved in some doubt as to its application to the School District of Kansas City. The doubt is because of a question whether the use of the word "article" in the last proviso of the Section is an error. See Section 9763 R. S. 1899; Laws of Missouri 1909, p. 784; Laws of Missouri 1915, p. 382. In the instant case we will assume, but will not decide, the Section is applicable to School District.) We observe the powers and duties of School District's board provided in the Sections pertain to the acquisition, construction, care, custody, maintenance and repair of schoolhouses, and to the provision of the materials and appliances essential to the effectual fulfillment of School District's agency in its educational purpose. The State has not delegated the police power to school districts—however, we see that where the State in the exercise of its powers has expressly enjoined upon a school board the duty of adopting specific precautionary measures and utilizing particular types of appliances (for example, measures and appliances pertaining to sanitation) otherwise within the scope of the police power, the municipality, although vested with the police power unrestricted in such respects, cannot interfere. Board of Education v. St. Louis, supra.

370

■ The people of Kansas City have availed themselves of the privilege of local self-government. Section 16, Article IX, Constitution of Missouri, 1875; Section 7589, R. S. 1939, Mo. R. S. A.; Charter of the City of Kansas City. The State in its exercise of the police power is discharging a governmental function. Generally, the police power affecting property and persons within the municipality's corporate limits is reposed in City. Relating to the power as exercised by the measures involved herein, see Subsections (22), (23), (32), (43), (50) and (61), Section 1, Article I, of the Charter of Kansas City. The indispensability of local self-government arises from problems implicit in the safety, order, health, morals, prosperity and general welfare of thickly populated areas. ''Within its authorized sphere of action, a city has been termed 'a miniature state.' '' State ex rel. Audrain County v. City of Mexico, 355 Mo. 612, 197 S. W. 2d 301. No constitutional or statutory restriction of City's police power as to its application to ■ the regulation of the facilities of public school buildings has been observed by us; and, as we have seen, the State in the exercise of its own powers could have acted or could have expressly enjoined upon or delegated to School District's board the full responsibility of taking particular measures, in connection with School District's school buildings, otherwise within the scope of City's police power. Board of Education v. St. Louis, supra. Since the State itself has taken no precautionary measures, and City has been vested with the regulatory and supervisory responsibilities of the exercise of the police power, and School District (having no police power) has not been expressly and specifically given full duty to attend to these responsibilities, we think the Legislature is content in the thought the measures to be taken are within the police power vested in City. State ex rel. Audrain County v. City of Mexico, supra; Kansas City v. Fee, 174 Mo. App. 501, 160 S. W. 537; Pasadena School Dist. v. City of Pasadena, 166 Cal. 7, 134 Pac. 985; Cook County v. Chicago, 311 Ill. 234, 142 N. E. 512, 31 A. L. R. 442. It could be reasonably urged the Legislature is wise in so singly reposing such grave responsibilities in City, in view of the technical experience and advice City's officials and inspectors must have acquired in preparing for and in performing their important duties in connection with the prescribed regulations and regulatory inspections of the facilities of the many buildings of Kansas City. It would also seem reasonable to say that School District enjoys a fine advantage to itself by having the technical and experienced supervision of City's inspectors by which the lives and health of students, teachers and other employees of the schools and School District's property may be the better protected, and with no more disadvantage than the payment of a reasonable inspection fee. The confusion possible in a dual responsibility in the exercise of the functions of local self-government of a city, especially in the exercise of the police power, is pointed out in the case of State

ex rel. Audrain County v. City of Mexico, supra. It is not enough to say (as School District has alleged) that School District, at its own expense, causes its boilers, smokestacks, fuel-burning instrumentalities, and elevators to be inspected; and that independent inspections are made by inspectors of insurance companies. Such inspections are, no doubt, made by the proprietors of numerous private buildings of Kansas City. Of course, School District's board would have an official duty to take measures to protect the public property entrusted to them. They would also have the duty to take precautions that the facilities of the school buildings were in such condition they would not unnecessarily injure others. It should not be urged that School District's board has no such duty merely because they (or the District) could not be subjected to liability for their negligence in a failure to perform the duty. Examine Cochran v. Wilson, 287 Mo. 210, 229 S. W. 1050. Such a duty is referable to the proprietorship of buildings, public and private, generally.

See the court's discussion in the case of Kansas City v. Fee, supra, in which case defendant (who, as a janitor of the school district's school building, was directly in charge of a steam-heating boiler) was charged with and convicted of the violation of an ordinance providing that no person, not a fireman or engineer licensed by the city, should be in charge of any steam boiler used for steam-heating purposes. It is true that the licensing ordinance did not directly impress itself upon the facilities of the public school buildings; and that the school district was recognizing and consenting to the measure, and was admitting the measure did not interfere with the district's educational purpose. Nevertheless, the Kansas City Court of Appeals boldly (but correctly, we believe) discussed the case in affirmatively answering the question, "Are the public schools, or rather more specifically in this case, are the employees of the public schools located within a city subject to those regulations of the city which are purely police regulations and do not involve any other limitation or control?" (174 Mo. App. at page 504, 160 S. W. at page 538.)

The decisions of the courts of other jurisdictions are not all in precise alignment with our decision. See cases collated in the Annotation at 31 A. L. R. 450 et seq., following the reported case of Cook County v. Chicago, supra, which collation includes the cases of Kentucky Inst. v. Louisville, 123 Ky. 767, 97 S. W. 402; and Salt Lake City v. Board of Education, 52 Utah 540, 175 Pac. 654, cited by School District in its brief. The differences in decision, it seems, are in part due to the diversity of language of constitutional and statutory provisions of the various states as well as by the interpretation and construction of such provisions which the courts of several states have deemed proper; the Annotation seems scoped generally to include cases involving the applicability of provisions of so-called municipal "building codes" to state and county buildings; and the

cases included in the Annotation generally involve questions of the applicability of the provisions of the codes to the construction of new public buildings. It would seem obvious the construed provisions of constitution and statute may not have like effect when applied to different regulatory measures. As an illustration, see the Utah decision, where it was held the municipal regulations relating to the character of construction material and relating to the entrances and the exits of buildings were not applicable to the construction of a school building, and then observe how the court squared around and approved the municipality's requirement that the school building should have telephonic communication with the fire department when and after the constructed school building was occupied. We are not disposed to here further analyze these opinions so ably reasoned and written; however, the tendency of decision in harmony with ours herein seems to us more likely to promote the public safety, health and welfare.

The judgment should be reversed and the cause remanded.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.