J. EARL SMITH, Substituted for JOSEPH F. BREDECK, Deceased, (Plaintiff) Appellant, v. BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, a Corporation, PHILLIP J. HICKEY, Superintendent of Instruction, HILLIARD F. MUELLER, Acting Commissioner of School Buildings, and A. K. NUSHAN, Supply Commissioner, (Defendants) Respondents, No. 41298—221 S. W. (2d) 203.

Court en Banc, June 13, 1949.

*George L. Stemmler,* City Counselor, and *Thos. J. Neenan,* Associate City Counselor, for appellant.

*Emmet T. Carter* and *Gerald K. Presberg* for respondents.

266

■■■■■■■■■■■■■■■■■■■■

■ TIPTON, J.—This action is for a declaratory judgment and injunction instituted by Joseph F. Bredeck, Health Commissioner of the city of St. Louis, against the Board of Education of the city of St. Louis, a corporation, Phillip J. Hickey, Superintendent of Instruction, Hilliard F. Mueller, Acting Commissioner of School Buildings and A. K. Nushan, Supply Commissioner, to determine if Ordinance No. 43518 of the city of St. Louis which regulates the sanitary conditions of restaurants of that city applies to the 42 restaurants located in certain public school buildings and operated by the Board of Education. The respondents filed a motion to dismiss appellant's petition which was sustained by the trial court. The St. Louis Court of Appeals reversed the judgment of the trial court and ordered a judgment to be entered in accordance with the prayer of appellant's petition. (See 213 S. W. 2d 889.) Since the decision of the St. Louis Court of Appeals, the appellant has died and his successor in office, J. Earl Smith, has been substituted as appellant.

Ordinance 43518 of the city of St. Louis regulates sanitary conditions of restaurants in St. Louis. It provides that it shall be unlawful to operate a restaurant in the city without first obtaining a permit from the Board of Public Service to do so; that the application for such permit shall be made to the Health Commissioner who shall thereupon examine the premises described in such application and recommend to the Board of Public Service whether the restaurant comes within the standard set by the ordinance; and if so the Board shall grant the permit. The ordinance provides ■ many regulations, among which are the examination of samples of food, drink and other related substances; the method of washing utensils used; the proper disposal of wastes and garbage; clean outer garments to be worn by all employees; and that no person who is affected with any communicable disease or who is a carrier of a communicable disease shall be employed.

With commendable frankness the respondents admit for the purposes of this case that the ordinance is a valid police regulation of the city of St. Louis applying to all restaurants operated in that city except those operated by the Board of Education. Respondents also admit that the State of Missouri has not delegated the police power to school districts. But respondents contend that the State has made a specific grant of power by statute to the Board of Education to prescribe, supervise and regulate the sanitary conditions of the school buildings, including these restaurants and, therefore, this specific grant of power excludes the exercise of such power by the city under its general police power.

To sustain their contention the respondents rely upon the following excerpts of applicable statutes governing the Board of Education of the city of St. Louis as found in Missouri Statutes Annotated:

Sec. 10724. "Every city in this state now having or which may hereafter have five hundred thousand inhabitants or over, together with the territory now within its limits, or which may in the future be included by any change thereof, shall be and constitute a single school district, shall be a body corporate, and the supervision and government of public schools and public school property therein shall be vested in a board of twelve members, to be called and known as the 'board of education of ——' (in which title the name of such city shall be inserted), and in a superintendent of instruction and a commissioner of school buildings. Such board of education shall, by and in said name, sue and be sued, purchase, receive, hold and sell property, do all things necessary to accomplish the purpose for the attainment of which such school district is organized, . . . "

Sec. 10725. "Every such board of education shall have general and supervising control, governing and management of the public schools, and public property in such city; shall exercise generally all powers in the administration of the public school system therein, appoint such officers, agents and employees as it may deem necessary and proper and fix their compensation; shall have power to fix the time of its meetings, to make, amend and repeal rules and by-laws for its meetings and proceedings, for the government, regulation and management of the public schools and school property in such city, . . . "

Sec. 10731. "The commissioner of school buildings shall be appointed by the board of education for a term of four years, during which term his compensation shall not be reduced. He shall devote all his time to the duties of his office, and shall be charged with the care of the public school buildings of such city, and with the responsibility for the ventilation, warming, sanitary condition and proper repair thereof."

Sec. 10732. "He [commissioner of school buildings] shall appoint such assistants and deputies as may be authorized by the board of

education, whose compensation shall be fixed by the board; and one of said assistants shall be a trained and educated engineer, qualified to design and construct the heating, lighting, ventilating and sanitary machinery and apparatus connected with the public school buildings.''

Sec. 10339. ''The board of directors, or board of education, shall have the power, in its discretion, to install in the school buildings under its care the necessary apparatus and appliances, and to purchase the necessary food to enable it to provide and sell lunches to children attending the schools: . . . ''

Several of the above sections were before us for construction in the case of Board of Education of City of St. Louis v. City of St. Louis et al., 267 Mo. 356, 184 S. W. 975. In that case city officials of St. Louis were threatening to arrest the Board of Education's agents, servants and employees because in the construction of a school building known as the Horace Mann School they were not complying with the city ordinance in reference to ventilation of the plumbing to be installed in that building. We held that under the above sections that relate solely to the school district of the city of St. Louis the state had given the school board the exclusive right to determine interior sanitary arrangements for the ventilation of its water-closets. In ruling the case, we said:

''It will be noted that this act not only gives the board of education plenary power with reference to the construction, maintenance, and care of the public school buildings of the city, but descends into matters connected with the health and comfort of the pupils, including the designing as well as the construction and maintenance of the very appliances which are the subject of this litigation, ventilating and sanitary machinery and apparatus to be installed and maintained for the removal from the building of foul and noxious air necessarily generated in the use of the water-closets.'' Loc. cit. 976.

It is respondents' contention that that case is decisive of the issues before us. Section 10339 does not deal exclusively with the school district of the city of St. Louis, but includes all school districts. It is the section that gives school districts the power to operate school restaurants. The other sections referred to above apply only to the school district of the city of St. Louis.

Section 10731, supra, provides for a commissioner of school buildings. It further provides that he ''shall be charged with the care of the public school buildings of such city, and with the responsibility for the ventilation, warming, sanitary condition and proper repair thereof.'' Under this section the ''sanitary condition'' of the buildings is vested in the commissioner of school buildings to the exclusion of any police power of the city, (Board of Education of City of St. Louis v. City of St. Louis, supra) but we are of the opinion that this power here given does not apply to the operation of restaurants. The power given by this section is limited to the school buildings.

The operation of restaurants under Ordinance 43518, supra, includes a great deal more than the mere sanitary conditions of the buildings. As we have already pointed out, this ordinance includes the inspection of food sold, the method of cleaning cooking and eating utensils, the disposal of wastes and garbage, the method of dress for the restaurant employees, whether such employees are affected with any disease in a communicable form, and other regulations. Since the respondents have "not been expressly and specifically given full duty to attend to these responsibilities, we think the Legislature is content in the thought the measures to be taken are within the police power vested in City." Kansas City v. School District of Kansas City, 201 S. W. 930, l. c. 934.

Nor do we think that the last mentioned section when considered with Section 10732 would sustain respondents' contention. That section provides for the appointment of assistants and deputies, and states that "one of said assistants shall be a trained and educated engineer, qualified to design and construct the heating, lighting, ventilating and sanitary machinery and apparatus connected with the public school buildings." These sections are dealing with the sanitary conditions of school buildings and not with the sanitary conditions of restaurants that may be operated in these buildings. Certainly, there is nothing in the statutes relied upon by respondents that could be said to expressly and specifically give to them the right to control the sanitary conditions of school restaurants and their employes. It is true these restaurants are operated only for the pupils and employees of the school where they are located but disease could be spread to the entire community by permitting employees who are carriers of communicable diseases to work there. The qualifications as required by Section 10732 of a "trained and educated engineer" would not necessarily qualify this engineer to see that these restaurants are operated under the same sanitary conditions as required by the ordinance in question.

We agree with the St. Louis Court of Appeals that the trial court and the parties treated the motion to dismiss as a motion for a judgment on the pleadings. It therefore follows that the trial court erred in sustaining respondents' motion to dismiss. The judgment of the trial court is reversed and the cause remanded with directions to enter a judgment for the appellant in accordance with the prayer of the petition. All concur.