610 P.2d 517

**George O. CAESAR, Plaintiff-Appellant,**

v.

**The STATE of Idaho,
Defendant-Respondent.**

**No. 12859.**

Supreme Court of Idaho.

April 2, 1980.

Rehearing Denied May 19, 1980.

Iver J. Longeteig of Runft & Longeteig, Boise, for plaintiff-appellant.

David H. Leroy, Atty. Gen., William A. McCurdy, Sp. Asst. Atty. Gen. of Quane, Smith, Howard & Hull, Boise, for defendant-respondent.

DONALDSON, Chief Justice.

This is an appeal from an action to recover general and special damages arising from injuries suffered by plaintiff-appellant George O. Caesar. Caesar was injured as a result of a fall sustained while leaving Boise State University's Bronco Stadium at the end of a football game played on November 29, 1975, Caesar brought suit in the district court, alleging negligence on the part of the state in that it knew or should have known of the slippery and dangerous condition of the stadium's concrete steps and passageways. Following trial, the jury returned a special verdict and found the state not guilty of negligence. Judgment was entered to that effect.

Caesar then moved for a new trial on grounds that the trial court erred in sustaining state's objection to Caesar's offer of proof concerning the existence of a Boise City ordinance. Caesar claims that this ordinance required the installation of safety equipment at the site of his injuries and the excluded offer of proof established negligence per se on the state's part. Caesar's motion was denied and he timely filed this appeal from both final judgment and the order denying motion for new trial. We affirm on both counts.

The ordinance which Caesar attempted to offer at trial was adopted by the Boise City Council on January 2, 1968, effective immediately. This ordinance adopted the provisions of the 1967 Edition of the Uniform

Building Code. Included in this Code was § 3305(i) which required the installation of handrails in stairwells as a part of the local building ordinance. At the time Bronco Stadium was built it appears that stairwell No. 19, in which Caesar was injured, did not have handrails.

On the date of Caesar's injury, he was a paying spectator at a Boise State University football game. On the evening prior to the game it had snowed and there had been subfreezing temperatures and high winds. There was conflicting testimony concerning the slippery condition of the stadium's walkways during the game. At the conclusion of the game Caesar attempted to exit the upper deck of the stadium through stairwell No. 19 in the northwest corner. The stairwell, instead of having handrails, was protected by 36 inch high concrete walls on either side of the 6 foot stairwell. The walls were 8 inches wide. While negotiating the crowded stairwell, members of the crowd fell, carrying Caesar to the bottom of the stairwell where he suffered a fractured leg. Caesar suffered damages allegedly caused by the condition of the stairwell and the absence of required safety equipment such as handrails.

The sole issue raised on appeal is whether the trial court correctly sustained the state's objection to the offer of proof relating to the Boise City ordinance. Thus, we do not address the issue of whether the state is immune from liability under one of the governmental exceptions of I.C. § 6–904. Nor do we address the question of whether Caesar might have recovered under a theory of law other than negligence per se, resulting from a violation of the ordinance.

In considering the admissibility of evidence establishing the existence and terms of the ordinance the district court reached several conclusions. First, the state's objection to the admission of such evidence could not be sustained on grounds of materiality because Caesar's complaint charged a failure to provide safety equipment and this was sufficient to raise the issue of compliance with the ordinance. Second, the court

concluded that in the absence of a state statute subjecting state buildings to city ordinances, the restrictions contained in ID. CONST. art. 12, § 2 prevent the application of local police regulations to state buildings. Former I.C. § 67–2304 vested the authority to provide and secure all plans and specifications for public works costing more than one thousand dollars in the Commissioner of Public Works. Finally, the court found that a conflict existed between the local ordinance and general laws of the state due to the authority vested in the city building inspector by the local ordinance and that vested in the Commissioner of Public Works under the statute.

■ Our analysis of this issue necessarily involves a review of the basic tenets of municipal corporation law. Idaho has long recognized the proposition that a municipal corporation, as a creature of the state, possesses and exercises only those powers either expressly or impliedly granted to it. *Sandpoint Water & Light Co. v. City of Sandpoint*, 31 Idaho 498, 503, 173 P. 972, 973 (1918); *Boise Dev. Co. v. Boise City*, 30 Idaho 675, 688, 167 P. 1032, 1034–35 (1917). This position, also known as "Dillon's Rule," has been generally recognized as the prevailing view in Idaho. Moore, "Powers and Authorities of Idaho Cities: Home Rule or Legislative Control?", 14 Idaho L.Rev. 143, 147, n. 18 (1977) (for cases supporting this view). Thus, under Dillon's Rule, a municipal corporation may exercise only those powers granted to it by either the state constitution or the legislature and the legislature has absolute power to change, modify or destroy those powers at its discretion. *State v. Steunenberg*, 5 Idaho 1, 4, 45 P. 462, 463 (1896).

The City of Boise was originally one of three "special charter" cities which received its charter from the territorial legislature. *See* 1866 Idaho Sess. Laws, ch. 52, p. 205 (An Act to Incorporate Boise City). As a "special charter" municipality it could enact and regulate matters of purely local concern; the legislature could not regulate in those areas and preempt the authority of the city. Moore, *supra* at 149, n. 28, n. 29.

However, in 1961 the City of Boise's special charter was repealed when it became a city of the first class. 1961 Idaho Sess. Laws, ch. 51, p. 79. It is thus now subject to the same limitations imposed by constitution and statute upon other Idaho municipalities under the principle of Dillon's Rule.

Article 12,, § 2 of the Idaho Constitution has been viewed as a grant of local police powers to Idaho cities. *State v. Clark*, 88 Idaho 365, 373, 399 P.2d 955, 959 (1965); *Rowe v. City of Pocatello*, 70 Idaho 343, 348–49, 218 P.2d 695, 698 (1950); *Clyde Hess Dist. Co. v. Bonneville County*, 69 Idaho 505, 510, 210 P.2d 798, 801 (1949); *State v. Robbins*, 59 Idaho 279, 285–86, 81 P.2d 1078, 1080–81 (1938). It provides that "Any county or incorporated city or town may make and enforce, within its limits, all such *local* police, sanitary and other regulations as are not in conflict with its charter or with the general laws." (emphasis added)

■ Municipal corporations which enjoy a direct grant of power from the Idaho Constitution are, however, limited in certain respects. The city cannot act in an area which is so completely covered by general law as to indicate that it is a matter of state concern. *In re Hubbard*, 62 Cal.2d 119, 41 Cal.Rptr. 393, 396 P.2d 809, 812–13 (1964). Nor may it act in an area where, to do so, would conflict with the state's general laws. *State v. Musser*, 67 Idaho 214, 219, 176 P.2d 199, 201 (1946).

Classification of a matter as either "local" or "statewide" has been decided in other jurisdictions on numerous occasions. *Luhrs v. City of Phoenix*, 52 Ariz. 438, 83 P.2d 283 (1938); *City of Pueblo v. Kurtz*, 66 Colo. 447, 182 P. 884 (1919); *State v. Lynch*, 88 Ohio St. 71, 102 N.E. 670 (1913); *Kalich v. Knapp*, 73 Or. 558, 142 P. 594 (1914). This Court, however has not had occasion to define what a "local," as opposed to a "general," matter might be. "Generally . . those functions considered governmental or public in nature are considered to be of statewide concern, and not purely municipal or local." *Moore, supra* at 166.

■ Presumably, it follows that those fields of activity fully occupied by the legislature reflect an intention that they will not be occupied by municipalities. It thus becomes necessary to review relevant statutory language to determine whether a Boise City building ordinance may apply to state-owned and operated buildings. Where it can be inferred from a state statute that the state has intended to fully occupy or preempt a particular area, to the exclusion of municipalities, a municipal ordinance in that area will be held to be in conflict with the state law, even if the state law does not so specifically state. *United Tavern Owners of Philadelphia v. School Dist. of Philadelphia*, 441 Pa. 274, 272 A.2d 868, 870 (1971); *see Boyle v. Campbell*, 450 S.W.2d 265, 267 (Ky.1970).

■ Former I.C. § 67–2304 empowered the Commissioner of Public Works to provide and secure all plans and specifications for, and to have supervision of the construction, alteration, equipping and furnishing or repair of any and all public buildings and improvements, the cost of which repairs or construction exceeded $1,000 in value. The Commissioner's actions were subject to the approval of the Permanent Building Fund Council. Under I.C. § 67–2304 the Permanent Building Fund Council had the option of adopting rules and regulations, including those consistent with existing law, for a program of inspection and preventive maintenance in order to carry out the provisions of that act. The council was not required to do so, however, and perhaps more important, the legislature did not expressly authorize municipalities to adopt such rules and regulations in the event that the Building Fund Council did not.

Since the purpose of Title 67, Chapter 23, as expressly stated in I.C. § 67–2311 was "to render all public buildings now or hereafter owned or maintained by the state of Idaho, or any official, department, board, commission or agency thereof reasonably free from hazards to the general public," we deem that the legislature intended to allocate this police power to the state in its concern for the safety of the *general public*.

Since the Idaho Industrial Commission and the Department of Labor were each vested with the right of entry and inspection of all public buildings under I.C. § 67–2312 for the purpose of ascertaining unsafe conditions, this vested right would presumably contain the right to inspect for structural defects and inadequate safety conditions, including the absence of handrails in stairwells. Other provisions for remedying hazardous conditions in public buildings are contained in I.C. §§ 67–2313 through 2318. Such provisions authorize *state* officials to handle reports of inspections, recommendations for the correction of hazardous conditions, and duties of compliance with such recommendations.

Taken as a whole, these statutes indicate that the area of state-owned buildings is completely covered by the general law and may not be subjected to an ordinance which is purely local in nature. ID. CONST. art. 12, § 2. To recognize the authority placed in the Boise City building inspector would conflict with the authority vested in the Idaho Industrial Commission and the Department of Labor by I.C. § 67–2312 and is thus impermissible. ID. CONST. art. 12, § 2; *State v. Musser, supra; United Tavern Owners of Philadelphia v. School Dist. of Philadelphia, supra; Boyle v. Campbell, supra.* As a result, the Boise City Building Code cannot apply to state-owned buildings. In reaching this conclusion we note that several of our sister states have reached the same result on facts similar or analogous to those in the case at bar. *Chugach Electric Ass'n v. City of Anchorage,* 476 P.2d 115 (Alaska 1970); *Board of Regents v. City of Tempe,* 88 Ariz. 299, 356 P.2d 399 (1960); *Hall v. City of Taft,* 47 Cal.2d 177, 302 P.2d 574 (1956); *Paulus v. City of St. Louis,* 446 S.W.2d 144 (Mo.App.1969).

In those cases which have upheld the validity of the municipal ordinance, it should be noted that the courts in those cases recognized the *absence* of any state regulations on the particular subject, and in the absence of such state regulations, held that compliance with the municipal codes was mandatory. *Smith v. Board of Education,* 359 Mo. 264, 221 S.W.2d 203, 205 (1969); *Kansas City v. School Dist. of Kansas City,* 356 Mo. 364, 201 S.W.2d 930, 934 (1947); *Port Arthur Independent School Dist. v. City of Groves,* 376 S.W.2d 330, 333 (Tex.1964). We therefore hold that the offer of proof was rightfully denied. The judgment and the order denying motion for new trial are affirmed. Costs to respondent. No attorney fees allowed.

SHEPARD, BAKES and McFADDEN, JJ., concur.

BISTLINE Justice, concurring and dissenting.

The first question here is whether the State of Idaho is bound to comply with a city building code when it builds a state building within the city limits, and I think that the Court's opinion provides the correct answer—no it need not. *E. g., Board of Regents v. City of Tempe,* 88 Ariz. 299, 356 P.2d 399 (1960) (where the city was enjoined from applying its building codes and regulations to the construction of a state structure). The further question arises, however, whether a state building that does not comply with the city building code is necessarily safe for public use just because it is a state building. Obviously this is not true, and it is for the jury to determine whether the state building was negligently designed and built. The final and determinative question thus becomes whether the Boise ordinance was relevant to the issue of the alleged negligence of the State.

Here, as the majority notes, the Permanent Building Fund Council had the option under I.C. § 67–2304 of adopting rules and regulations covering the "construction, alteration, equipping and furnishing and repair" of state buildings. However, it appears from the appeal record presented that no such rules and regulations were ever adopted, from which it follows that at the time the State built Bronco Stadium the State had promulgated no specific code of safety regulations for state buildings,[1] and

1. The Idaho Building Code Advisory Act, I.C. §§ 39–4101 to 4129, was thereafter adopted, in 1975, to provide for uniform building codes throughout Idaho.

in particular no regulation which required the installation of handrails on extremely long and precipitous stairways.

The City of Boise, on the other hand, had adopted a building code that, among other things, required the installation of handrails in stairways. This determination that handrails should be required was not a mere off-chance determination by the Boise City Council. Rather, Boise had adopted the provisions of the 1967 edition of the Uniform Building Code (Code),[2] which contained the requirement for handrails in § 3305(i). The Code stated that it was first published by the Pacific Coast Building Officials Conference in 1927, and that it has been revised every three years thru 1967. Testimony at trial indicated that a major percentage of buildings in the United States are covered by the Code, and that the basic purpose for setting up these standards was "maintaining life safety regulations for all public buildings." From this it readily follows that the Boise City ordinance, although it could not establish negligence per se, was admissible as evidence on the issue of negligence. *See, e. g., Frazier v. Continental Oil Co.,* 568 F.2d 378 (5th Cir. 1978); *St. Louis-San Francisco Railway Co. v. Burlison,* 262 So.2d 280 (Fla.App.1972); *Jorgensen v. Horton,* 206 N.W.2d 100 (Iowa 1973); *Nordstrom v. White Metal Rolling & Stamping Corp.,* 75 Wash.2d 629, 453 P.2d 619 (1969); *Vogel v. Alaska Steamship Co.,* 69 Wash.2d 497, 419 P.2d 141 (1966).

Because it cannot be said that the rejection of the Boise building code falls into the category of harmless error, I am unable to join the Court in affirming.

---

**2.** Idaho adopted the Uniform Building Code on a statewide basis in 1975 in I.C. § 39–4109.