Dear Representative House:
This opinion letter is in response to your question asking:
 Can a municipality annex territory of an existing port authority, duly established under the provisions of Chapter 68, RSMo, and assuming it can annex such territory, what effect does the annexation have on the port authority?
You indicate the port authority about which you are concerned is the St. Charles County Port Authority, and the annexations about which you are concerned were by the City of St. Peters, a fourth class city, and the City of St. Charles, a constitutional charter city. Discussions with your office indicate that the second part of your question pertains to whether such annexations will prevent the port authority from exercising its regular scope of control over the territory within its boundaries.
The territory which may be annexed by a fourth class or a constitutional charter city is described in Missouri statutes as "unincorporated areas". Sections 71.012 and 71.014, RSMo 1986. The term "unincorporated" in those statutes means the area which is outside the boundaries of incorporated cities. City ofOlivette v. Graeler, 338 S.W.2d 827, 834 (Mo. 1960), overruled on other grounds, City of Town and Country v. St. LouisCounty, 657 S.W.2d 598, 606 (Mo. banc 1983) but specifically reaffirming the City of Olivette holding regarding the definition of unincorporated land. The territory which special purpose districts occupy does not ipso facto become an incorporated area within the meaning of the annexation statutes and, therefore, cannot be excluded from annexation for that reason. City of Olivette v. Graeler, supra at 836. This holding comports with the holdings in other jurisdictions that annexation by a city is not prohibited simply because the area to be annexed is within the boundaries of a special purpose district. City of Pelly v. Harris County Water Control Improvement Dist. No. 7, 198 S.W.2d 450, 452-453 (Tx. 1946);Annexation to the City of Anchorage, Alaska, of the Rogers ParkArea, 128 F. Supp. 717, 718 (D.C. Alaska 1954); In ReAnnexation to City of Anchorage, Alaska of Eastchester AreaNumber Three, 129 F. Supp. 551, 554 (D.C. Alaska 1955); City ofBellevue v. Eastern Sarpy County Suburban Fire ProtectionDistrict, 143 N.W.2d 62, 63-64 (Nebr. 1966); Tovey v. City ofCharleston, 117 S.E.2d 872, 875 (S. Car. 1961); Fairfax Countyv. City of Alexandria, 68 S.E.2d 101, 106 (Va. 1951); State exrel. East Lenoir Sanitary District v. City of Lenoir,105 S.E.2d 411, 414-415 (N.Car. 1958); McQuillin Mun. Corp.,
Volume 2, Section 7.22 (3rd Ed.). Therefore, we conclude that a city may annex territory within the boundaries of an existing port authority.
As for the question of what effect annexation has on the ability of a port authority to carry out its statutory powers and functions, it is significant that Section 68.015.1, RSMo 1986, contemplates that port authorities may exist within the boundaries of a city.
 "1. The legislative body, or county commission, of each county or city creating a port authority or any port authority created within said city pursuant to section 68.010 hereof shall designate what areas within such county or city shall comprise one or more port districts, subject to the limitation that any area designated as within a port district shall be or could be reasonably connected to the business of a port. . . ." Subsection 1 of Section 68.015, RSMo 1986.
It is logical to infer that the statutory powers and functions of port authorities set forth in Chapter 68, RSMo, were set forth in contemplation of them being exercised within the boundaries of a city.
In regard to a special purpose district which did not previously exist within a city's boundaries having part of its territory annexed, the general rule in Missouri is that, without specific constitutional or statutory provisions to the contrary, such annexation does not "take away any of these [statutory] powers, and did not take this territory out of the [levee] District or change its boundaries or its authority over all of its original area." State ex rel. Collins v. Rooney,361 Mo. 389, 235 S.W.2d 260, 262 (banc 1950) (annexation of part of levee district by Kansas City did not prevent the district from pursuing its reclamation plan including condemnation of private property and the making of assessments within the annexed territory). In St. Louis County Library District v. Hopkins,375 S.W.2d 71 (Mo. 1964), the Missouri Supreme Court upheld the library district's power to continue levying and collecting its taxes on property within those portions of its territory annexed by the City of Florissant despite the fact that the City of Florissant had a tax supported municipal library of its own.
However, disputes about which of two overlapping governmental entities, such as a city and a special purpose district, is going to be superior to the other in the exercise of a particular power or function involve a fairly complex legal analysis the outcome of which is dependent on the facts unique to each individual case. See, for example, City of Kirkwood v.City of Sunset Hills, 589 S.W.2d 31 (Mo.App. 1979) and discussion of Missouri cases therein; City of St. Louis v. Cityof Bridgeton, 705 S.W.2d 524 (Mo.App. 1985); State ex rel.Maryland Heights Fire Protection District v. Campbell,736 S.W.2d 383 (Mo. banc 1987); Board of Education of City of St.Louis v. City of St. Louis, 267 Mo. 356, 184 S.W. 975 (1916);Kansas City v. School District of Kansas City, 356 Mo. 364,201 S.W.2d 930 (1947); Bredeck v. Board of Education of City ofSt. Louis, 213 S.W.2d 889 (St.L. Ct.App. 1948); Smith v. Boardof Education of City of St. Louis, 359 Mo. 264, 221 S.W.2d 203
(banc 1949). Since there is no specific fact situation which has been presented to this office implicating any specific power or function, we cannot give specific guidance as to a particular power or function.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General