**In the Matter of the ANNEXATION TO CITY OF ANCHORAGE, ALASKA OF EASTCHESTER AREA NUMBER THREE.**

**In the Matter of the ANNEXATION TO CITY OF ANCHORAGE, ALASKA OF EASTCHESTER AREA NUMBER FIVE.**

**In the Matter of the ANNEXATION TO CITY OF ANCHORAGE, ALASKA OF EASTCHESTER AREA NUMBER SIX.**

**Nos. A–10095–10097.**

District Court, Alaska
Third Division, Anchorage.
April 9, 1955.

Edgar P. Boyko, Anchorage, Alaska, for protestants.

John L. Rader, Anchorage, Alaska, for City of Anchorage.

FOLTA, District Judge.

These cases have been consolidated for hearing of the petitions for annexation, the protests against, and the motions to dismiss, them. The contentions in support of the motions are (1) that the petitioner lacks the power to annex because of the partial repeal by Ch. 97, S.L.A. 1923, of the act of June 6, 1900, 31 Stat. 520 as amended by the act of April 28, 1904, 33 Stat. 529, Ch. 21, Title 12, C.L.A.1913—the law under which Anchorage was incorporated in 1920—without a saving clause as to existing municipalities; and (2) that the power to annex is limited to first class cities by Ch. 97, S.L.A.1923, Art. 2, Ch. 1, Title 16, of the Alaska Code, and that Anchorage is not a first class city because it was organized as a town. The question which emerges from these contentions is whether Ch. 97 was intended to apply to municipalities then in existence. The disposition of this question necessarily involves an examination of the statutes relating to the incorporation of municipalities and the annexation of adjacent areas in the light of their legislative history.

Title 12, Ch. 21, Compiled Laws of Alaska, 1913, contains the substance of previous Acts of Congress governing the incorporation of towns and cities. So far as acts of the Territory are concerned, the first reference to second class cities, of which a Board of Trustees was in each instance the governing body, appears in Ch. 47, S.L.A.1913, and provisions for annexation first appear in Ch. 76, S.L.A.1913. The express mention of common councils only would, of course, imply the exclusion from Ch. 76, of second class cities governed by boards of trustees. Reference is made to these provisions dealing with second class cities only because of the part they play in reaching the final conclusions.

Ch. 50, S.L.A.1915, carries forward this scheme of classification with the same distinction as to governing bodies. The limitation of the power to annex to cities of the first class, implicit in Ch. 76, S.L.A.1913, was removed by Ch. 47, S.L.A.1921, and the scope of the statute enlarged to include first and second class cities. To summarize, municipalities organized under the act of June 6, 1900, as amended in 1904, were governed by common councils, and were designated cities of the first class, Ch. 50, S.L.A.1915, and

were empowered to annex adjacent territory, Ch. 47, S.L.A.1921. Cities of the second class were governed by Boards of Trustees, Ch. 47, S.L.A.1913, and were empowered to annex, Ch. 47, S.L.A.1921. The incorporation of native villages was provided for by Ch. 11, S.L.A.1915, and of towns on the public domain by Ch. 44, S.L.A.1919. Such was the state of the law on the subject in 1923, when Ch. 97 was enacted, revising and codifying the law relating thereto and repealing all laws inconsistent therewith, including, of course, Ch. 47, S.L.A.1921. The present law on the subjects of incorporation and annexation has been codified and appears in Articles 1 and 2, Ch. 1, Title 16, of the Alaska Code. Although Ch. 97 provided a complete system of municipal law it neither mentioned cities of the first class nor was it expressly made applicable to existing municipal corporations. It is this latter omission that furnishes the basis for the contention that the City of Anchorage does not possess the power to annex. These statutory enactments of common purpose but with inconsistent provisions, disclose a legislative process that is strikingly empiric and hence synthesis rather than analysis must be resorted to for a resolution of the doubts created.

Before the enactment of Ch. 97, in 1923, provision had been made for the incorporation of first and second class cities, communities on the public domain, and native villages. Second class cities and native villages were expressly excluded from Ch. 97. At that time the question well might have been posed whether it was the intent to create a fifth class, requiring 400 incorporators, or make the statute applicable to the two remaining classes, but subsequent curative legislation, Ch. 87, S.L.A.1933, reaffirming the application of Ch. 97 to towns on the public domain, made it clear that it was not intended by Ch. 97 to create a fifth class but to provide a new legislative system applicable only to first class cities and to those situate upon the public domain.

Concluding, then, that Ch. 97 applied to first class cities only, with the exceptions just noted, the question remains whether it applied to first class cities then organized or was to have a prospective operation only. No authority is cited in support of the proposition that an act relating to municipalities generally would not apply to those then in existence without an express provision to that effect; but as evidence of the alleged defect on which their motions are predicated, the protestants point to S.B. No. 78, enacted a few weeks ago, the declared purpose of which is to validate the incorporation of cities. Since the question here under discussion was raised during the present session of the Legislature, it is presumed that the bill was introduced more from considerations of caution than from any well-founded belief that the principal cities were operating without authority of law. Be that as it may, the act, being couched in terms of the present and future rather than the past, is wholly inadequate to validate the incorporation of any municipality as of the date of its incorporation. But it is inconceivable that in enacting Ch. 97 the Legislature intended to strip the principal cities of the Territory of their powers by repealing the statute from which they were derived without supplying a substitute. Common sense, the history of the legislation on the subjects under discussion, and implications of the broadest significance in Sections 87 and 88 of Ch. 97 dealing with the exceptions noted, all negative such an intent. Further support for this view may be found in the fact that not only has the City of Anchorage functioned for many years as such under Ch. 97, now appearing in amended form as Ch. 1, Title 16 of the Alaska Code, but also in the long-continued practical construction placed upon these statutory provisions by those charged with their administration and affected thereby, and judicial recognition of such construction, Cochran v. City of Nome, 10 Alaska 425; Femmer v. City of Juneau, 9 Cir., 97 F.2d 649; In re Annexation of Slaterville to Town of

Fairbanks, D.C., 83 F.Supp. 661; Reherd v. Manders, D.C., 66 F.Supp. 520.

 It is my opinion, therefore, that Ch. 97, S.L.A.1923, as codified under Title 16 of the Alaska Code, applies to municipal corporations organized under the 1904 act supra, and that the City of Anchorage may exercise the powers enumerated in that chapter, from which it follows that the motion to dismiss should be denied.

 Turning to the merits of the petition, it should be noted that it was stipulated that the record in the previous annexation proceeding entitled In re Annexation to the City of Anchorage, Alaska, of the Rogers Park Area; the Mountain View Area; the Eastchester Area Number One; the Eastchester Area Number Two; and In the Matter of the Incorporation of the Village of Eastchester as a City of the Second Class, D.C., 128 F.Supp. 717, so far as applicable to the instant proceeding, may be considered by the Court, and this has been done.

The opposition to the proposed annexation is not unlike that described in my Memorandum Opinion in that proceeding. The areas sought to be annexed are a part of one compact, urban community comprising the metropolitan area of Anchorage, and, except for the invisible corporate boundaries, are a part of the city's social and economic existence. The real boundaries extend away beyond the corporate boundaries. Moreover, not only do the streets of the city extend through these areas, but they bear the names originally given them by the city and the areas themselves are indistinguishable from that part of the city adjacent thereto. The opposition in part is traceable to the failure of the city during the boom to extend its facilities and services into the areas as they developed. This delay resulted in the extension of privately owned utilities and the organization of public utility districts. The situation is such that the annexation law appears to be inadequate, and gerrymandering, or the appearance thereof, would appear to be excusable in attempting to cope with it; otherwise it may well develop that several municipalities will be carved out of this one community, each with a government of its own, resulting in a multiplication of facilities and services, increased tax burdens, and inevitable jurisdictional conflict and chaos. Henrico County, Windsor Farms, Inc., v. City of Richmond, 177 Va. 754, 760, 15 S.E.2d 309. The Court is not going to lend itself to the imposition of a hydra-headed government on the people of a single urban area unless it has no alternative under the law. It adheres to the ruling, made in the previous proceeding referred to, that the fact that the areas are embraced within a public utility district constitutes no bar to annexation.

The Court finds that the areas sought to be annexed are contiguous to the City of Anchorage; that the requirements of law have been met; that no private rights will be injured by the annexation of such areas, and that it is just and reasonable that they should be annexed to the City.

An order for an election in each case may therefore be presented, so that the people may determine for themselves whether the City of Anchorage is to be allowed to expand in the traditional manner or be put in a strait jacket.