10 N.J. Super. 301 (1950)
76 A.2d 302
BOARD OF HEALTH OF THE CITY OF PLAINFIELD, COMPLAINANT-RESPONDENT,
v.
CHARLES SIMKIN & SONS, INC., CHARLES SIMKIN, SAMUEL SIMKIN AND THEODORE SIMKIN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Union County Court.
Decided October 30, 1950.
*302 Mr. David T. Wilentz, attorney for defendants-appellants.
Mr. Salvator Diana, attorney for complainant-respondent.
McGRATH, J.C.C.
Complaint was filed in the court below in which the Board of Health of Plainfield charged that the defendants violated Article 2, Section 2, of the local health ordinance entitled, "The Plumbing Code of the City of Plainfield," in that the defendants entered into a contract to do plumbing work in a new school building being constructed in Plainfield, and did in pursuance to the said contract install or cause to be installed plumbing fixtures, pipes, and other apparatus to be used for bringing in the water supply or removing liquid and water-carried wastes on the premises, and did engage in or carry on the trade, business or calling of an employing or master plumber, without first having been licensed to do so, contrary to the provisions of the said ordinance.
A stipulation was entered into in the municipal court on which that court rendered its decision and this same stipulation is the basis on which the parties wish this court to render opinion as to the validity of the conviction. The gist of the *303 stipulation is that all defendants engaged in the trade, calling or business of employing or master plumbers without the license referred to.
No ordinance has been sent up with the appeal but it was stipulated in open court that the defendants did violate the section of the ordinance in question by working as employing or master plumbers on this school, unless they are excused by statute. All other jurisdictional requirements are admitted and the sole question is whether in view of R.S. 18:11-11, the defendants or any of them were required to submit to such an examination for employing or master plumber under the provisions of Plainfield's ordinance of the local board of health.
R.S. 18:11-11 reads as follows:
"No board of education of any school district shall be required to secure the approval of its plans and specifications for the erection of any school building or any part thereof by the municipality therein; nor shall any board or any contractor doing work in connection with school buildings be required to secure a building permit from the municipality."
The defendants contend that the statutes R.S. 18:11-10, 18:11-11 and 18:11-12, plainly show an intention of the Legislature that the full responsibility for the erection of public schools and the alterations thereof shall be solely on the local boards of education and state board, and that the object of these statutes in providing that neither the board or the contractor shall be required to secure a building permit is to place the full responsibility on said boards.
Obviously the whole purport of these statutes is to place the responsibility for the proper planning and letting out the work on public schools on such boards. However, responsibility for passing on plans for buildings, usually vested in a local building department, is an entirely different responsibility from that of a local board of health in protecting the public, in general, from unqualified master plumbers, and it is well known that municipalities maintain local boards to license electricians as well as master plumbers and these boards are usually separate from the building departments *304 and operate in a different sphere. To adopt the construction urged by the defendants would mean that the responsibility for having only properly qualified master plumbers and incidentally electricians would be placed solely on the local and state boards of education, if the work happened to be on a school building. In order to obtain approval of any building plans in any city or municipality, it is not only necessary to obtain a building permit to insure proper plans, but in addition to proper plans the persons who shall do either the master plumbing (or electrical work) must be duly authorized after an examination. It does not appear that the Legislature intended an exception in public schools where it is even more necessary that the master plumbers and electricians should be skilled than in an ordinary building. The whole trend of the statute is obviously to secure a building which shall be safe for the children, and the Legislature did not intend an exception whereby a man might do master plumbing or electrical work and not have a license therefor, merely because the work is in a school building. Therefore, unless we can read into the statute a plain intention by the Legislature that the local school board or state board shall have the responsibility of seeing that such workmen are licensed as required, a situation would be created whereby such unlicensed persons could work on public schools but not on any other building.
As pointed out in the case of United Dining Car Co. v. Camden, 103 N.J.L. 232 (Sup. Ct. 1927):
"The usual governmental scheme is to refer plumbing and sewer connections to one department, as the board of health, and the general building scheme to the building department. Neither, as a rule, is dependent on the other, nor should it be, as it would create endless confusion if one department, in exercising its functions, were to be bound by the acts of another within its own sphere."
It was said in Leeds v. Atlantic City, 13 N.J. Misc. 868 (Circ. Ct. 1935):
"It is elementary that where the words of a legislative enactment are plain and unambiguous and clearly express the intent of the legislature with respect to a subject within the constitutional sphere *305 of legislation, the courts must be governed by the statutory enactment. It is equally true that the courts cannot arbitrarily expand the scope of a statute beyond the natural and literal meaning of its words and in accordance with some conjectural notion of an unexpressed intention on the part of the legislature."
As a general policy, the law has created for master plumbers, on the ground of health protection, a necessity to be examined and licensed and this is an added protection to the public, in addition to requiring proper building plans. I see no legislative intention of removing such added health protection from the building of public schools.
The defendants also contend that the words "responsible bidder" as used in the statute R.S. 18:11-10 mean that the local board and the state board have the duty of deciding the qualifications of master plumbers and other workmen who require a license on the ground of "responsibility." This would require the local or state board to conduct a special examination of master plumbers (and electricians) to decide whether they are qualified, and I know of no such interpretation of the word "responsible" in the statute. The Legislature has provided other means for ascertaining the qualifications of these people and I see no reason why the defendants should be exempt merely because they are working on a school building.
I therefore find that the defendants are guilty of violating the ordinance as charged in the complaint, but as this is a new question, I suspend sentence but with costs of this court.