69 N.J. Super. 94 (1961)
173 A.2d 536
MARTIN J. KAVENY, PLAINTIFF,
v.
BOARD OF COMMISSIONERS OF THE TOWN OF MONTCLAIR, JOSEPH D. ALLEN, JAMES A. WALSH, BOARD OF EDUCATION OF THE TOWN OF MONTCLAIR AND NEW JERSEY STATE BOARD OF EDUCATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Heard June 28, 1961.
Decided July 5, 1961.
*95 Mr. Francis F. Welsh, for plaintiff.
Mr. Samuel Allcorn, Jr., for defendants Board of Commissioners of the Town of Montclair, Joseph D. Allen and James A. Walsh.
Mr. Charles R.L. Hemmersley, for defendant Board of Education of The Town of Montclair.
Mr. David D. Furman, Attorney General of New Jersey, by Mr. Alfred Abbotts, for defendant New Jersey State Board of Education.
WAUGH, A.J.S.C.
This is an action in lieu of prerogative writ (mandamus) wherein the plaintiff seeks to compel the defendant building inspector and plumbing inspector of the Town of Montclair to inspect the work on additions to an alteration of the Montclair High School, a public secondary school in the Town of Montclair, Essex County.
The matter is presented before the court on plaintiff's motion for summary judgment, a cross-motion by the *96 defendant State Board of Education for summary judgment, a motion by the defendant Board of Education of the Town of Montclair and the Board of Commissioners of the Town of Montclair to dismiss the complaint as not stating a claim upon which relief may be granted.
It is admitted that the Board of Education of the Town of Montclair commenced work on the construction of certain additions to and alteration of the Montclair High School, a public school. The buildings have not yet been completed. It is not denied that the plans and specifications for the improvements being made were approved by the State Board of Education as required by R.S. 18:11-8. No change in the plans or specifications have been made without the approval of the State Board of Education.
The Court has proof before it in the affidavit of George Crum, an inspector of school building construction employed by the Division of School Building Services, New Jersey State Department of Education, showing inspections of the Montclair school on March 27, 1961 and May 23, 1961. These inspections show compliance to date with the State Board's rules and regulations concerning plumbing and building construction (with one minor exception). That the inspections of Mr. Crum are supervised by the State Board is proven by the affidavit of Dr. Kenneth Woodbury, Assistant Commissioner in charge of the Division of Business and Finance of the New Jersey State Department of Education.
There is a sharp dispute as to whether or not the work is progressing without inspection by either the plumbing inspector and the building inspector of the Town of Montclair and without the proper supervision of these two departments. The plaintiff charges particularly that the plumbing work does not meet the requirements of the plumbing code of the Town of Montclair. The defendant Board of Education of the town specifically denies these allegations claiming that the building inspector and the plumbing inspector have voluntarily made periodic inspections of the work and *97 have found it to be superior to that required under the Montclair building code. In addition, the contract of the local board provides:
"Sub-paragraph (e) of Paragraph 10 of the General Conditions, entitled `Surveys, Permits and Regulations,' which are applicable to all six contracts (see photocopy of page 16 hereto annexed) provides:
`The contractor shall give notices and comply with laws, ordinances, rules and regulations bearing on conduct of work as drawn and specified. If the contractor observes that drawings and specifications are at variance therewith, he shall promptly notify the architect in writing and adjust any necessary changes as provided in contract for changes in work. If the contractor performs any work knowing it to be contrary to such laws, ordinances, rules and regulations, and without such notice to the architect, he shall bear all costs arising therefrom.'
Sub-paragraph (a) of Paragraph 12 of said General Conditions, entitled `Inspections and Tests,' (see photocopy of page 17 hereto annexed) provides:
`The contractor shall give written notice to the architect at least two weeks before plastering is started or any work is closed in so an inspection of all work in place can be made by the State Department of Education. Plastering work may not proceed until written approval is received by the architect from the State Department and forwarded to the contractor.'
The paragraph entitled `Codes, Rules and Permits' of the specifications for the heating and ventilating contract (see photocopy of page HU-4 hereto annexed) provides:
`All work and materials shall be installed in accordance with all codes, laws, et cetera, made by governing bodies, including local, national and the National Board of Fire Underwriters. The contractor shall secure and pay for all permits, et cetera.'
The specifications for the plumbing work contract contains the following provisions (see photocopy of page P-1 annexed hereto):

`General Conditions:
All work of this contract shall be performed in accordance with requirements of the contract documents. In addition the following conditions shall apply specifically to the plumbing contractor.
(a) The plumbing contractor shall carefully read the aforementioned references and study the general construction plans and his proposal shall include all items whatsoever that may be necessary to complete the working and finished plumbing systems of the character and type specified.
(b) All work shall be done in strict accordance with the rules of the National Board of Fire Underwriters, the State Department of Education, and in full compliance with the requirements of any governing board having jurisdiction.

*98 Code Requirements.

(a) All materials and equipment furnished, and labor performed under this contract shall be in strict accordance with the requirements of the local plumbing code, or sanitary regulations.
(b) Plumbing contractor shall file plans and other requirements with the Town of Montclair plumbing inspector before proceeding with installation and pay for all fees.'"
But on these motions I may not decide disputed facts. I must assume noninspection and noncompliance. The attorneys for all defendants forthrightly concede this proposition of law and take the position that the plaintiff is not entitled to require or compel any of the defendants to comply with the local building and plumbing ordinance and that they therefore have no authority to inspect such work to determine whether it does or does not comply with the said ordinance. All parties including the plaintiff agree that a decision in this case involves only a question of law.
The pertinent Montclair ordinance provides:
"Article I.
a. Section I.

Application.
2. All matters concerning, affecting or relating to the location, construction, alteration, repair, removal, demolition, equipment, use and occupancy, and maintenance of buildings or structures erected or to be erected in the Town of Montclair are presumptively provided for in this ordinance except as otherwise provided for by law, ordinance, rule or regulation.
(Buildings Affected)
3. The provisions of this ordinance apply to buildings and structures on land not devoted or appropriated to streets as defined herein, and to constructions such as vaults, areas or street encroachments, however placed, that are appurtenant to such buildings and structures.
Except as otherwise specifically provided for by law, such provisions shall apply with equal force to municipal, county or state buildings as they do to private buildings." (Italics by the court.)
R.S. 18:11-8 provides as follows:
"Approval and filing of plans for school buildings
No contract for the erection of any public school building or any part thereof shall be made until and after plans and specifications *99 therefor have been submitted to and approved by the state board of education. A copy of the plans and specifications as approved shall be filed forthwith with the state board. No change in the plans or specifications shall be legal unless the same have been submitted to and approved by the state board. A copy of all changes as approved shall be filed forthwith with the said board."
R.S. 18:11-11 provides as follows:
"No municipal permit for school buildings required
No board of education of any school district nor any board of education of a county vocational school shall be required to secure the approval of its plans and specifications for the erection or alteration of any school building or vocational school building or any part thereof by the municipality therein; nor shall any board of education or any board of education of a county vocational school or any contractor doing work in connection with school buildings or county vocational school buildings be required to secure a building permit from the municipality."
From a consideration of the ordinance and the above sections of Title 18, together with R.S. 18:2-4(b), which gives the State Board of Education power to "prescribe and enforce rules and regulations necessary to carry into effect the school laws of this State," and sub-section (u), which states "The State Board shall have all other powers requisite to the performance of its duties"; by reason of R.S. 18:3-2 one of the assistant commissioners of education has the supervision of business and financial matters; and that by reason of R.S. 18:3-3(a) the commissioner has the duty of inspection of buildings and of research, which presumably includes research into types of buildings; by reason of R.S. 18:11-1 it is the duty of each district to provide suitable school facilities and accommodations for all children; by reason of R.S. 18:11-6 the commissioner is required to prepare standard plans for various types of school buildings, and by reason of R.S. 18:11-7 is required to provide separate plans for various types of work, I conclude that it was the legislative intent to preempt the field of public school planning and specifications for public school building and to place that power in local boards of education subject only *100 to the approval of the State Board of Education as provided in R.S. 18:11-8. Just as clearly these statutes exclude control on the part of the municipal government.
An analogous situation has arisen in New Jersey with respect to the police power delegated to the municipality for use zoning. In Hill v. Borough of Collingswood, 9 N.J. 369 (1952) a question arose as to whether or not a park commission acting under R.S. 40:37-195 et seq. was subject to use zoning power under R.S. 40:48-1, 2, and R.S. 40:55-3 et seq.
Justice Heher speaking for the court said at pages 374 and 375:
"We are not concerned here with a park founded and maintained by the defendant borough itself or by one of its governmental agencies. The particular park is an integral part of a county park system established under a commission appointed by the local board of freeholders pursuant to R.S. 40:37-195 et seq. Thereby the commission is constituted a body politic `with power to sue and be sued, use a common seal and make by-laws.' R.S. 40:37-198. It is empowered to establish and maintain public parks and open spaces for public resort and recreation, to acquire lands for such purposes in its corporate name, and to `make rules for the use and government' of such parks and places. Section 204. The lands of the park system may extend into an adjoining county: And `all ordinances, rules and regulations duly established' by the commission `and applicable to the park shall be effective to the same extent in all portions of the park regardless of the county line,' and the jurisdiction of its police officers is extended accordingly. R.S. 40:37-17, 40:37-18. In addition to the specific powers adverted to, the commission is authorized to make, alter, amend and repeal `rules and regulations for the protection, regulation and control of the parks and parkways and the roads, driveways, sidewalks, paths, lakes, pools, ponds, fountains, trees, flowers, shrubs, statuary, buildings, tools, implements and other things contained therein, and prescribe and fix the amount of fines and penalties for the violation of such rules and regulations,' and to bring proceedings for the enforcement of such fines and penalties. R.S. 40:37-201, 40:37-240. The commission is also permitted to appoint and establish `a constabulary to preserve order in the parks and parkways under its control, and to secure the enforcement of the rules and regulations passed and enacted by it,' and to `organize the constabulary into a police system to be known as "the park police of the county of ____."' R.S. 40:37-202. The members and officers of the park police `may arrest on view and without warrant and conduct before a *101 magistrate, any person[s] found violating the rules and regulations enacted by the commission' for the protection, preservation, regulation and control of the parks and parkways, and all property and other things therein, and in addition shall have all the powers conferred by law on police officers or constables in the enforcement of the laws of this state and the apprehension of violators thereof.' R.S. 40:37-203. The power of condemnation is also given. R.S. 40:37-207. Its lands are held for `the benefit of the county.' R.S. 40:37-208. Operating expenses are defrayed by the board of freeholders on requisition of the park commission. R.S. 40:37-233, 40:37-234. Capital expenditures may be met by the proceeds of bonds or any obligations of the county. R.S. 40:37-235.
Thus, the Legislature has provided for the establishment of county park systems and governance under autonomous bodies in terms that clearly exclude the divisive control claimed by the municipality here. By explicit provision, the police power delegated to the municipality for use zoning and the regulation of merchandising may not be exerted within the area of special jurisdiction assigned to the park authority. The statutes are in pari materia and on well settled principles of construction are to be given full force and effect, each in its own sphere of action. The theory of dual control advanced by the defendant municipality is at variance with the evident sense of the legislative expression. It is an unrealistic conception of the legislative scheme  such as would militate against the fulfillment of the basic statutory policy. This is the ratio decidendi of Astley v. Newark, 98 N.J.L. 251 (Sup. Ct. 1922)."
See also Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237 (1955) and Aviation Services v. Board of Adjustment, Hanover Township, 20 N.J. 275 (1956).
It is noted that in Montclair the municipal boundary lines and the board of education boundary lines are the same; but in some parts of the state school districts include more than one municipality.
That local boards of education are a separate governmental agency in New Jersey is clear in Botkin v. Westwood, 52 N.J. Super. 416 (App. Div. 1958), appeal dismissed 28 N.J. 218 (1958). Justice Hall, then Judge Hall, speaking for the Appellate Division, said at page 425:
"In New Jersey school districts of whatever classification, though coterminous with municipal boundaries except in cases of consolidated or regional districts, are, and have been for more than half *102 a century, local governmental units, governed by a board of education. R.S. 18:6-21 and 18:7-54. George W. Shaner & Sons v. Board of Education of City of Millville, 6 N.J. Misc. 671, 673 (Sup. Ct. 1928). They are separate, distinct and free from the control of the municipal governing body except to the extent our education law provides."
The advantage of having a study of various types of school buildings undertaken by a state agency properly staffed must be evident to all. The State Board of Education is a body well adapted after study to fix the standards which should be followed. It is noted that the standards are to be fixed by an arm of the executive branch of the state government, not by the local board. The State Board has an interest in fixing the highest standard consistent with realistic costs. Of course, with State Board approval the local board may build a school suitable to its own educational need and financial ability.
Most local building ordinances provide for approval of and filing of plans and specifications for a building; yet R.S. 18:11-11 specifically provides not only that the board not be required to secure the approval of plans and specifications, but they shall not "be required to secure a building permit from the municipality."
Consider R.S. 18:11-12 which reads as follows:
"Examination of school buildings; ordering alteration or abandonment.
The commissioner of institutions and agencies shall, upon the request of the commissioner of education, cause to be made a thorough examination of any school building and report to the commissioner of education its findings thereon.
The commissioner of education may direct the entire or partial abandonment of any building used for school purposes and may direct the making of such changes therein as to him may seem proper."
Could it be argued with any logic that before the commissioner of education may order the abandonment of any building he must go through the procedure outlined in R.S. 40:48-2.3 et seq. authorizing the exercise of police power *103 by the municipality with respect to unfit buildings. Taken as a whole the statutes evince a legislative intent to remove the whole matter of building and abandonment of school buildings from municipal control completely.
The plaintiff urges that R.S. 18:2-8 is the only section of the statute giving the State Board of Education any direct conduct over building operations. With this the court agrees; but this does not preclude an indirect control through approval of plans and specifications such as the State Board exercises over local school buildings, albeit the actual supervision including payment of costs is by the local board of education.
Nor is the case of Board of Health of Plainfield v. Charles Simkin, 10 N.J. Super. 301 (Cty. Ct. 1950) helpful to plaintiff's position. The point at issue there was whether or not a local ordinance may provide that only licensed plumbers might do plumbing work on a school building. Judge McGrath decided that an ordinance providing for licensed plumbers was valid.
The argument that the only purpose of R.S. 18:11-11 was to obviate the necessity of payment of fees from one governing body to another "and unnecessarily increasing the cost of construction" is not sound, since the fee money would be paid by one body and immediately turned back to the public treasurer.
In passing I note that the attorney for the commissioners of the town relies upon the following cases: Board of Regents v. City of Tempe, 88 Ariz. 299, 356 P.2d 399 (Sup. Ct. 1960); Salt Lake City v. Board of Education of Salt Lake City, 52 Utah 540, 175 P. 654 (Sup. Ct. 1918); Board of Education of St. Louis v. City of St. Louis, 267 Mo. 356, 184 S.W. 975 (Sup. Ct. 1960); City of Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642 (Sup. Ct. 1909).
The court's reasoning in these cases is consistent with the reasoning of our Supreme Court in the zoning cases as applied to the state agencies (Bloomfield, Hanover and Collingswood cases quoted above).
*104 I conclude that the Legislature with respect to plans and specifications for public school buildings has preempted the field. The Legislature has provided that the plans and specifications must be approved by the State Board and need not be filed with the municipality nor a permit obtained. I conclude that the plans and specifications thus approved are the ones with which the building contractor must comply.
Since under the Montclair ordinance here in dispute the building inspector must inspect all ordinances relating to construction of buildings and make all necessary inspections  see Article I, Section 11 (2a and e)  and the plumbing inspector enforce those portions of the code relating to plumbing and health  see Article XVII (a) Section 1  and since the code and ordinance insofar as plans and specifications do not apply to the building here constructed, the court will not order the defendant building inspector and plumbing inspector to enforce the terms of the Montclair ordinance.
It follows that the motion to dismiss will be granted without costs. The plaintiff's motion for summary judgment is denied without costs.