STATE IN INTEREST OF T. L. O., JUVENILE-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1982—Decided June 30, 1982.

Before Judges MILMED, JOELSON and GAULKIN.

*Lois De Julio,* First Assistant Deputy Public Defender, argued the cause for appellant T. L. O. (*Stanley C. Van Ness,* Public Defender, attorney).

*Victoria Curtis Bramson,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*Irwin I. Kimmelman,* Attorney General, attorney; *Victoria Curtis Bramson* and *Mark Paul Cronin,* Deputy Attorney General, on the brief).

PER CURIAM.

We affirm the denial of the motion to suppress the evidence produced by the search of the juvenile's purse substantially for the reasons expressed by Judge Nicola in his opinion reported at 178 *N.J.Super.* 329 (J. & D.R.Ct.1980).

However, we find that neither the record nor the findings and conclusions of the trial judge are sufficient for us to determine the sufficiency of the *Miranda* waiver which was assertedly made by or on behalf of the juvenile immediately before her

resumed questioning by the police officer. We must therefore remand the matter to the trial court for further proceedings and findings and conclusions in light of the principles enunciated in *Edwards v. Arizona*, 451 *U.S.* 477, 101 *S.Ct.* 1880, 68 *L.Ed.2d* 378 (1981) and *State v. Fussell*, 174 *N.J.Super.* 14 (App.Div.1980).

The final adjudication of delinquency entered on January 7, 1982 is vacated and the matter is remanded for further proceedings consistent herewith. We do not retain jurisdiction.

JOELSON, J. A. D., dissenting in part.

The opinion of the trial judge, *State in Interest of T. L. O.*, 178 *N.J.Super.* 329 (J. & D.R.Ct.1980), acknowledges that ". . . public school officials are to be considered governmental officers, . . ." *Id.* at 340. *See also Durgin v. Brown*, 37 *N.J.* 189, 199 (1962); *Kaveny v. Bd. of Com'rs of Montclair*, 69 *N.J.Super.* 94, 101–102 (Law Div. 1961), aff'd 71 *N.J.Super.* 244 (App.Div. 1962); *State in the Interest of G. C.*, 121 *N.J.Super.* 108 (J. & D.R.Ct.1972). The trial court's opinion further recognizes that juveniles in public schools are not without constitutional rights. 178 *N.J.Super.* at 337. *See also In re Winship*, 397 *U.S.* 358, 90 *S.Ct.* 1068, 25 *L.Ed.2d* 368 (1970); *Tinker v. Des Moines School Dist.*, 393 *U.S.* 503, 89 *S.Ct.* 733, 21 *L.Ed.2d* 731 (1969); *In re Gault*, 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.2d* 527 (1967). However, although stating that public school students are entitled to Fourth Amendment rights, the trial court chose to follow those jurisdictions which apply a lower standard of reasonableness with regard to searches and seizures conducted by public school authorities against children in school.

The result arrived at by the trial court and approved by my colleagues in the majority would deny to a high school girl suspected of an infraction of a school regulation the same Fourth Amendment protection given to an out-of-school juvenile suspected of a violation of law, or even to an adult suspected of the most heinous crime. As anomalous as this might appear, it must be acknowledged that there is a special relationship be-

tween pupils and school authorities, and that the reasonableness of a search and seizure should be assessed in the context of that relationship. However, along with such an acknowledgment comes a need for the exercise of care lest the standard of reasonableness should be permitted to sink so low as to legitimize the search and seizures that took place in the case under review.

Although the trial judge in the opinion which has been adopted by my colleagues gave lip service to the Fourth Amendment, he applied the diminished standard of reasonableness in such a way as to render the protection of the Fourth Amendment virtually unavailable to juveniles in public schools who are suspected of violation of school regulations. As the trial judge noted, some jurisdictions flatly hold that the Fourth Amendment need not be applied in a school setting. 178 *N.J.Super.* at 339. However, the New Jersey Legislature has decreed otherwise in providing that juveniles shall be accorded "[t]he right to be secure from unreasonable searches and seizures." *N.J.S.A.* 2A:4–60. The Fourth Amendment protection of juveniles thus having been confirmed, courts should not effectively deny Fourth Amendment rights to school children while at the same time proclaiming that those rights exist.

The search we are dealing with was conducted in order to ascertain whether the juvenile had violated a school regulation by smoking a tobacco cigarette in an unpermitted location. The search revealed marijuana violations. The trial court in upholding the search relies on the concept of *in loco parentis.* 178 *N.J.Super.* at 338. That concept, which is usually applied for the purpose of protecting a child, is being used here to strip the juvenile of constitutional protection. It would be rare parents indeed who would turn their daughters over to the police the first time they find her to possess or even distribute marijuana. It is unthinkable that a parent so finding could be successfully prosecuted for not reporting the information to the police, whereas a school authority would most likely not be accorded the same tolerance.

Nevertheless, as already stated, it must be recognized that the *sui generis* relationship between school authorities and pupils requires a different standard of reasonableness concerning search and seizure. For instance, if a teacher has been informed that a school child has matches in his pocket and has announced his intention to roast marshmallows in the clothes closet, an immediate search of the youngster following his denial of possessing matches would be not only justified but necessary. Common sense must be used on a case by case basis with due regard to the danger that might reasonably be suspected, the seriousness of the suspected misconduct, or the over-riding need to enforce discipline in a given situation. The trial court's opinion suggests guidelines applicable to a lowered standard of reasonableness, 178 *N.J.Super.* at 342, but the record before us casts doubt about the validity of the search here even under the very guidelines suggested.

A fuller discussion of the facts of the case is now needed. According to the trial judge's factual review, a high school teacher observed T. L. O. and another girl smoking cigarettes in the girls' lavatory. The teacher immediately brought the girls to the vice-principal, and upon being asked whether she had been smoking, T. L. O. replied that she did not smoke at all. Thereupon, the vice-principal inspected her purse. His testimony was that as he reached into the pocketbook to remove a package of Marlboro cigarettes, he observed "rolling papers." He then looked further and found what appeared to be marijuana,[1] paraphernalia for smoking marijuana, and some empty plastic bags. He stated that he then went on to look at "all the compartments," and that in one of them he found index cards and letters between T. L. O. and another juvenile, which he read. They indicated drug distribution. He also opened a wallet containing $40.98 found in the compartment. The police

---

[1] The net weight of the marijuana was stipulated to be 5.40 grams.

were immediately called, and they took T. L. O. to police headquarters.

The juvenile was suspected of smoking ordinary cigarettes. There is no indication whatever, nor has it been charged, that she smoked marijuana in school. The only thing that a search of the juvenile's purse could have disclosed as to tobacco cigarettes was whether or not she possessed them. Yet such possession would not have constituted an infraction of any rule or law. It appears from the opinion of the trial court that the regulation which the juvenile was suspected of violating was that of smoking in an area not designated for that purpose. There was no school regulation or policy which flatly prohibited students from possessing cigarettes or even from smoking them in permitted areas. 178 *N.J.Super.* at 341–342. Nor can it be said that the search was necessary to gain information in order to avert the danger of fire attendant upon smoking in an unpermitted location. The vice-principal already had the direct account of the teacher who had personally witnessed the infraction by T. L. O. and another. Thus, the search was not conducted for the purpose of protection or for the maintenance of school discipline, but for the purpose of impeaching the credibility of the juvenile. Such a search is unreasonable even under a lowered standard, and its unreasonableness was exacerbated by its scope.

There is no doubt widespread frustration because of the exclusionary rule which bars from evidence material obtained through an improper search and seizure even though such search has obviously revealed the person searched to be guilty of having violated the criminal law. Such frustration is not difficult to understand, but the problem should not be addressed by our riding rough-shod over the rights of a juvenile in school, diminished though these rights may be.

I would reverse as to the denial of the motion to suppress the evidence obtained from the search and seizure.